COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Petty and Chafin
Argued at Lexington, Virginia


CRYSTAL ANN COOMER

                                                    OPINION BY
v.       Record No. 1017-16-3                JUDGE ROBERT J. HUMPHREYS
                                                    APRIL 4, 2017

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LEE COUNTY
Tammy S. McElyea, Judge


        Charles L. Bledsoe for appellant.

        Donald E. Jeffrey, III, Senior Assistant Attorney General (Mark R.
        Herring, Attorney General, on brief), for appellee.


        Crystal Ann Coomer ("Coomer") appeals the May 24, 2016 decision by the Circuit Court

of Lee County (the "trial court") convicting her of felony child endangerment, in violation of

Code § 18.2-371.1(B)(1), a Class 6 felony. Coomer's single assignment of error is that the trial

court erred in finding that she "committed a willful act or omission that was gross, wanton, and

culpable as to show a disregard for human life."

                                    I. Background

        On December 7, 2015, a grand jury of Lee County indicted Coomer for felony child

endangerment, in violation of Code § 18.2-371.1, such that on or about August 17, 2015, she did

"commit a willful act or omission in the care of [a child under eighteen years of age] so gross

and wanton as to show a reckless disregard for human life." On February 2, 2016, Coomer was

tried in a bench trial.

        In summary, the Commonwealth's evidence at trial was that on August 17, 2015, Coomer

and her fiancé, Eric Parsons ("Parsons"), went out for "date night" to Rooster's Pub. At

Rooster's Pub, Coomer and Parsons enjoyed dinner and a pitcher of beer. After dinner, they ordered a second pitcher of beer and planned to remain at Rooster's Pub to play games. However, shortly after ordering the second pitcher of beer Coomer received a telephone call from her twenty-two-month-old daughter's babysitter informing Coomer that the babysitter and the babysitter's boyfriend were "having issues" and the babysitter needed to leave. Coomer arranged to meet the babysitter at the Double Kwik convenience store near Leeman Field to pick up her twenty-two-month-old daughter.

As soon as she received the phone call, Coomer quit drinking alcohol, ate french fries, and waited approximately twenty minutes before driving to the Double Kwik convenience store. Coomer estimated that she and her fiancé had consumed about a pitcher and a half of beer. Coomer arrived at the convenience store without incident.

Coomer left the convenience store with her fiancé and twenty-two-month-old daughter in the car and traveled along Route 421 in Lee County toward her home in St. Charles, Virginia. The posted speed was 55 m.p.h. Coomer estimated that she was traveling about 35 to 40 m.p.h. and had about a car length between her and the car in front of her. It was dark and raining.

Susan Lanningham ("Lanningham") was driving the car in front of Coomer. Lanningham explained that due to the weather conditions that night she was travelling at an approximated speed of 45 m.p.h. Then, upon the realization that "the blacktop dropped off" because the roadway was being prepared to be resurfaced with new asphalt, Lanningham tapped her brakes to accommodate for the road conditions. Lanningham stressed that she did not slam her brakes, instead, she "merely slowed down." Coomer testified that Lanningham had suddenly slammed on her brakes, and immediately Coomer hit her brakes, but they locked up.

Coomer struck the rear bumper of Lanningham's vehicle. There was no damage apparent to either vehicle. At the time she was struck, Lanningham estimated that she was traveling

between 35 and 45 m.p.h. She reiterated that the roads were wet and that "it's very curvy up through there." After the collision, Lanningham exited her vehicle and called the police.

Trooper Munsey ("Munsey") of the Virginia State Police arrived at the scene of the accident at approximately 9:33 p.m. Upon arrival, Munsey placed Coomer in his vehicle to investigate the incident. At that time, he detected "an odor of alcohol about her person."[1]

Coomer told Munsey that she was the driver of the vehicle. Munsey asked Coomer if she had anything to drink that night. Coomer replied that she had consumed two beers about two hours before the accident. Then, Munsey administered the following three field sobriety tests: the horizontal gaze nystagmus ("HGN") test, the nine step walk and turn test, and the one-legged stand test. Coomer was unable to sufficiently pass the field sobriety tests to Munsey's satisfaction. However, on cross-examination, Munsey answered, "I mean, it wasn't one of those where I had to, you know, help support her."

After failing the field sobriety tests, Coomer was offered and accepted a preliminary breath test. The breath test recorded Coomer's blood alcohol content ("BAC") to be .097. Munsey arrested Coomer for driving under the influence of alcohol ("DUI"). At the Sheriff's office, Munsey offered Coomer a blood or breath test. Coomer took the breath test, also known as an intoxilyzer test, which revealed a .09 BAC.

Even though Coomer was arrested for DUI, Munsey did not create an accident report because there was no damage to either vehicle.[2] Further, because the vehicles had been moved to the shoulder, Munsey could not tell if Coomer had to slam on her brakes or had lost control. Munsey did not think speed was a factor. Additionally, Munsey testified that the

---

[1] Lanningham testified that she could smell alcohol emitting from the car that struck her.

[2] Lanningham testified that the impact from the collision was light and that she did not report any damage to her vehicle.

twenty-two-month-old child was asleep when he arrived at the scene and remained asleep during his investigation. Coomer also testified that her daughter slept through the entire incident.

Dr. James Kuhlman ("Dr. Kuhlman"), a forensic toxicologist with the Department of Forensic Science ("DFS"), testified via telephone from the DFS laboratory in Roanoke. The trial court declared Dr. Kuhlman an expert in the field of toxicology. Dr. Kuhlman testified that the examination of Coomer's breath certificate blood analysis showed a BAC level of .09 grams per 210 liters of breath. Then, he described the typical side effects of alcohol intoxication from a .09 BAC.

> Typical effects of a blood or breath alcohol at .09, in terms of driving, would be you would get some effect on what is known as divided attention. Divided attention in terms of driving an automobile is that driving is a multi-tasking event that you must, when you're driving, visually survey the road that you're travelling on. Those signals from your vision going to your brain to make those decisions, and then those are relayed through the nerves to the hands and feet, such as, you know, steer to keep the car within your lane of travel, make decisions about oncoming traffic, [and to] apply the brakes and gas pedal appropriately.

Dr. Kuhlman, through a method known as retrograde extrapolation, estimated that "the predicated alcohol concentration at the time of the accident would be .10 and .11 percent."

On cross-examination, Coomer admitted that on the night of the accident she willingly drank alcohol, willingly placed her child in her vehicle, and willingly drove her vehicle. Coomer also testified that while there were beer bottles in the vehicle, those bottles were old and leftover from a previous four-wheeling outing in the woods. Her fiancé, Parsons, testified that he consumed the same amount of alcohol at Rooster's Pub as Coomer.[3]

---

[3] At the scene of the incident, Parsons took a breathalyzer test to determine if he could drive the vehicle and the child home. Parsons passed the breathalyzer and drove himself and the child home.

The trial court provided its reasoning from the bench. In pertinent part, the trial court stated that "driving under the influence of alcohol with a child in the automobile subjects the child to a substantial risk of serious injury." The trial court stated that "it is the risk of substantial injury that must be shown" by the Commonwealth. Further, the trial court stated:

> Driving under the influence has inherent dangers that are presented to everyone on the highways, and certainly all passengers in a vehicle being operated by someone who's impaired by alcohol. Again, an objective standard is used to judge whether or not there was criminal negligence in a case. Considering the evidence as a whole, it's a dark, wet, curvy road, there was an accident, the Defendant's ability to operate a motor vehicle safely was impaired by alcohol, her blood alcohol content at the time of the accident was .10 to .11, well over the presumption of intoxication set forth by the laws of the Commonwealth of Virginia. Driving under the influence carries inherent dangers with it. And there was, in fact, again, an accident. I understand it was slight, but, nonetheless, there was an accident. An accident of the type that one would expect to be occasioned because one's abilities to respond to situations and safely operate a motor vehicle had been impaired through the use of the alcohol. And, again, the inherent dangers in such a situation were born out by what occurred in this case.

At the conclusion of the evidence, the trial court took the matter under advisement until February 10, 2016. On February 10, 2016, the trial court found Coomer guilty of child endangerment, in violation of Code § 18.2-371.1, a Class 6 felony. On May 24, 2014, the trial court denied Coomer's motion to set aside the verdict and sentenced her to three years of imprisonment, with all three years suspended. Additionally, the trial court placed Coomer on two years of supervised probation and one year of unsupervised probation.[4]

---

[4] Coomer pleaded guilty to operating a vehicle while impaired, in violation of Code § 18.2-266, a misdemeanor.

## II. Analysis

### A. Standard of Review

"When reviewing a defendant's challenge to the sufficiency of the evidence to sustain a conviction, this Court reviews the evidence in the light most favorable to the Commonwealth, as the prevailing party at trial, and considers all inferences fairly deducible from that evidence." Allen v. Commonwealth, 287 Va. 68, 72, 752 S.E.2d 856, 858-59 (2014). This examination "is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling. . . . [A]n appellate court must consider all the evidence admitted at trial that is contained in the record." Perry v. Commonwealth, 280 Va. 572, 580, 701 S.E.2d 431, 436 (2010) (quoting Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008)). The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder. Commonwealth v. McNeal, 282 Va. 16, 22, 710 S.E.2d 733, 736 (2011).

An appellate court may reverse the judgment of the trial court "if the judgment 'is plainly wrong or without evidence to support it.'" Crawford v. Commonwealth, 281 Va. 84, 112, 704 S.E.2d 107, 123 (2011) (quoting Code § 8.01-680). "If there is evidence to support the convictions, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial." Id. (quoting Commonwealth v. Jenkins, 255 Va. 516, 520, 499 S.E.2d 263, 265 (1998)). The issue on appeal is whether the record contains evidence from which "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." McMillan v. Commonwealth, 277 Va. 11, 19, 671 S.E.2d 396, 399 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). However, to the extent the appellant's assignment of error requires "statutory

interpretation, it is a question of law reviewed de novo on appeal." Grimes v. Commonwealth, 288 Va. 314, 318, 764 S.E.2d 262, 264 (2014).

B.  Whether Coomer's Intentional Intoxication Alone is Criminal Negligence

Coomer argues the evidence was insufficient to prove that she committed a willful act or omission that was gross, wanton, and culpable as to show a disregard for human life in violation of Code § 18.2-371.1(B)(1).  Code § 18.2-371.1(B)(1) provides in relevant part, "Any parent . . . or other person responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton, and culpable as to show a reckless disregard for human life is guilty of a Class 6 felony."  Thus, pursuant to the statute, in order for a person to be convicted of felony child neglect, the Commonwealth must prove beyond a reasonable doubt that the accused (1) committed a "willful act or omission in the care" of a child, and (2) that the act or omission is "so gross, wanton, and culpable as to show a reckless disregard for human life."

> "Gross negligence" is culpable or criminal when accompanied by acts of commission or omission of a wanton or willful nature, showing a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable result of his acts.

Rich v. Commonwealth, 292 Va. 791, 802, 793 S.E.2d 798, 804 (2016) (quoting Riley v. Commonwealth, 277 Va. 476, 484, 675 S.E.2d 168, 177 (2009)); see also Wood v. Commonwealth, 57 Va. App. 286, 297-98, 701 S.E.2d 810, 815 (2010).

In determining whether conduct rises to the level of criminal negligence, an "objective standard" applies, and criminal negligence may be found to exist when the defendant "either knew or should have known the probable results of his[/her] acts." Wood, 57 Va. App. at 298, 701 S.E.2d at 815 (quoting Riley, 277 Va. at 483-84, 675 S.E.2d at 177).  "Thus, the

- 7 -

Commonwealth need not prove that an accused actually knew or intended that [her] conduct would likely cause injury or death, but rather that the accused should have known [her] acts created a substantial risk of harm." Whitfield v. Commonwealth, 57 Va. App. 396, 406, 702 S.E.2d 590, 594 (2010) (quoting Wood, 57 Va. App. at 298, 701 S.E.2d at 815). "Such a determination necessarily will be specific to the circumstances of each case and, thus, whether a defendant's conduct is criminally negligent is usually a question for the trier of fact, unless reasonable minds could not differ." Carosi v. Commonwealth, 280 Va. 545, 556, 701 S.E.2d 441, 447 (2010). "Unlike Code § 18.2-371.1(A), the plain language of Code § 18.2-371.1(B)(1) does not require that a child actually suffer serious injury as a result of a defendant's acts or omissions." Wood, 57 Va. App. at 298, 701 S.E.2d at 815. "The absence of an injury requirement in subsection (B)(1) reflects the lesser nature of the offense, a Class 6 felony, and demonstrates a legislative intent to prohibit conduct that also has the potential of endangering a child's life." Commonwealth v. Duncan, 267 Va. 377, 385, 593 S.E.2d 210, 215 (2004).

In this case, Coomer admitted to willingly drinking alcohol, placing her twenty-two-month-old daughter in the car, and driving on the highways within the Commonwealth. In the light most favorable to the prevailing party below, the Commonwealth, Coomer had a BAC of .10 to .11 at the time of the accident. The trial court cited her level of intoxication, the wet road, and the accident as evidence of criminal negligence. However, given the appellant's low speed, well below the speed limit on the "wet and curvy road," and the fact that the accident resulted in no damage to either car, the issue of whether the evidence supports a finding of criminal negligence as a matter of law must necessarily turn solely on whether appellant's degree of intoxication standing alone, is sufficient to establish the element of criminal negligence. Thus, the disposition of this case depends on whether the totality of Coomer's

actions leading up to the accident created a "substantial risk" or a "probability" or the "potential" of serious injury or death to the child.

Coomer argues that there is no evidence, other than her intoxication, to show that her conduct met the criminal negligence prong of the felony child neglect statute, Code § 18.2-371.1(B)(1). Coomer stresses that she drove slowly for the road conditions, there was no damage to either vehicle, and the child never woke.

The Commonwealth has not cited any legal authority for the proposition that voluntary intoxication standing alone is sufficient to constitute criminal negligence for the purposes of felony child neglect, nor were we able to find any.

We begin our analysis by attempting to discern the General Assembly's intent in this regard and in doing so, we note that in 2000, the General Assembly enacted Code § 18.2-36.1 which provides in pertinent part as follows:

> A. Any person who, as a result of driving under the influence in violation of clause (ii), (iii), or (iv) of § 18.2-266 or any local ordinance substantially similar thereto unintentionally causes the death of another person, shall be guilty of involuntary manslaughter.
>
> B. If, in addition, the conduct of the defendant was so gross, wanton and culpable as to show a reckless disregard for human life, he shall be guilty of aggravated involuntary manslaughter, a felony punishable by a term of imprisonment of not less than one nor more than twenty years, one year of which shall be a mandatory, minimum term of imprisonment.

Since criminal negligence is an essential element of involuntary manslaughter, this statute would have been wholly unnecessary if the General Assembly believed that driving under the influence, standing alone, was sufficient to establish criminal negligence. Additionally, as further evidence of legislative intent in this regard, we also note that the General Assembly specifically chose to criminalize the exact situation presented by the facts of this case by

providing enhanced punishment for driving under the influence of alcohol or drugs with a minor in the vehicle.  See Code § 18.2-270(D).

The Commonwealth relies upon Wood v. Commonwealth for the opposite proposition. In Wood, a mother, Wood, was found in her parked vehicle at a commercial shopping area with her two children inside.  Wood had a BAC of .22, and she was also under the influence of Ambien.  On appeal, this Court affirmed Wood's conviction for felony child neglect.  In reaching that decision, this Court observed as follows:

> We underscore at this point appellant's high level of intoxication. *This alone justifies a finding of gross, wanton, and culpable conduct.*  Stevens v. Commonwealth, 272 Va. 481, 488, 634 S.E.2d 305, 310 (2006), cited with approval in Riley [v. Commonwealth], 277 Va. [467,] 484, 675 S.E.2d [168,] 178 [(2009)].  Although the Stevens Court pointed out additional aggravating conduct by Stevens, the Court reached the inescapable conclusion that alcohol alone can support such a finding.  Id.  "Again, we focus upon Stevens' high level of intoxication, approximately three times the legal limit.  This alone justifies a finding that Stevens' conduct was gross, wanton, and culpable."  Id.

Wood, 57 Va. App. at 301, 701 S.E.2d at 817 (footnote omitted) (emphasis added).

This Court also emphasized that

> this case has several aggravating factors beyond appellant's intoxication.  Appellant had ingested Ambien, a "hypnotic drug" that is "given for the primary purpose of causing and inducing sleep."  Appellant was functioning poorly, having been observed slumped over in her seat, making the incongruous statement that "[w]e're just pretending," and found sucking on a rag.  She remained in a semi-conscious state while in the parking lot for over thirty minutes, prompting concerned strangers to call 911.  During this period her children were essentially unattended and vulnerable to outside dangers.  Based on the evidence presented, the dangers inherent in such a situation could be inferred by the fact finder as a matter of common knowledge.

Id. at 302, 701 S.E.2d at 817.

While we are bound by precedent, the italicized language from Wood quoted above is both dicta and ignores the context in which it is used in Stevens where it also represents dicta.

- 10 -

Rather, in its holdings, our Supreme Court has consistently considered the totality of a defendant's conduct and the circumstances surrounding it with respect to whether the evidence was sufficient to establish that an appellant's conduct was gross, wanton, and culpable. See Carosi, 280 Va. at 556, 701 S.E.2d at 447. For example, in Stevens, our Supreme Court stated that Stevens' "high level of intoxication, [.25], alone justifies a finding that Stevens' conduct was gross, wanton, and culpable." 272 Va. at 488, 634 S.E.2d at 310. Yet, the Stevens Court still proceeded to consider the totality of the other circumstances—Stevens ran a red light, failed to apply his brakes before the collision, and did not know what he had struck—to collectively support a finding a gross, wanton, and culpable conduct. Id. at 488, 634 S.E.2d at 309-10. In this case, Coomer's level of intoxication was significantly lower than was the case in Stevens and we do not read the dicta in Stevens to suggest that voluntary intoxication that results in *any* degree of physical impairment constitutes gross, wanton, and culpable conduct reflecting a disregard for human life.

Recently, our Supreme Court withheld from concluding that consumption of alcohol alone established criminal negligence or "a reckless or indifferent disregard for the safety of others." Rich, 292 Va. at 798, 793 S.E.2d at 802. In Rich, Rich was convicted of driving under the influence where the victim was permanently impaired ("DUI maiming"), in violation of Code § 18.2-51.4. Id. While not felony child neglect, DUI maiming also requires a finding of criminal negligence. Rich was driving when she leaned over in the front seat of the vehicle she was driving so that her boyfriend could light her cigarette when she struck a man crossing the street in a medical scooter. Id. at 795-96, 793 S.E.2d at 800-01. Rich had a BAC of .13 and admitted to only having two hours of sleep in the past twenty-four hours. Id. at 796, 793 S.E.2d at 801. Our Supreme Court held that "[b]ased on her admitted inattentiveness while driving, her voluntary consumption of alcohol, her level of intoxication, and her voluntary decision to drive

- 11 -

while sleep-deprived . . . , Rich acted with 'a reckless or indifferent disregard for the safety of others.'" Id. at 803, 793 S.E.2d at 804. It is this combination of factors, not her intoxication standing alone, that met the high standard required of criminal negligence.

Here, Coomer's condition is distinguishable from that of Wood and Rich in several respects. First, her BAC was half of that measured in Wood, and less than that measured in Rich. Second, the testimony of the arresting officer suggests that Coomer was not severely impaired. Third, the road conditions contributed to the accident and Coomer was driving well below the speed limit in consideration of those conditions. Fourth, while Coomer's reaction time was not as fast as it should have been, she reacted quickly enough to avoid a serious accident. Fifth, there is *nothing* in Coomer's conduct other than the consumption of alcohol that suggests any negligence on her part. Moreover, the record lacks any indication of excessive speed or following too closely. Thus, unlike the other cases, the only evidence of a gross, wanton, and culpable act of commission or omission such as to show a reckless disregard for human life is that Coomer's BAC was .10. We conclude that Coomer's actions do not rise to the same level of culpability as the appellant in Wood or Rich.

The Commonwealth's evidence must establish by the totality of the circumstances that Coomer's action created the probability of a substantial risk of death or serious injury to her child, a risk that makes it "not improbable that injury will be occasioned." Morris v. Commonwealth, 272 Va. 732, 739, 636 S.E.2d 436, 440 (2006). In this instance, the record does not establish the presence of such a danger.

The trial court expressed its reasoning as follows,

> Driving under the influence has inherent dangers [when] a vehicle
> [is] being operated by someone who's impaired by alcohol. . . .
> Considering the evidence as a whole, it [was] a dark, wet, and
> curvy road[.] [T]here was an accident [and Coomer's] blood
> alcohol content at the time of the accident was .10 to .11, well over
> the presumption of intoxication set forth by the laws of the

Commonwealth of Virginia. . . . An accident of the type that one would expect to be occasioned because one's abilities to respond to situations and safely operate a motor vehicle had been impaired through the use of alcohol.

We do not in any way condone Coomer's actions in operating a motor vehicle while intoxicated and with her child in the car. Her actions support her conviction for DUI. However, the mere speculative possibility of harm alone was insufficient for conviction pursuant to Code § 18.2-371.1(B)(1) in this case. As such, the trial court's finding was plainly wrong.

## III. Conclusion

Policing the line between the ever present "possibility" of serious injury and the more concrete "probability" or "substantial risk" of serious injury or death can present difficult challenges. Unquestionably, driving with a BAC over the legal limit with a child, particularly a very young child, in the car creates a potential danger to the child. Without additional evidence in the record of a *substantial* risk or *probability* of serious injury or death to the child arising from the accident, Coomer's actions do not rise to the level required for a felony conviction pursuant to Code § 18.2-371.1(B)(1). Therefore, we reverse the trial court's decision to convict Coomer of felony child endangerment, in violation of Code § 18.2-371.1(B)(1), and dismiss the indictment for this offense.

<u>Reversed and final judgment.</u>