COURT OF APPEALS OF VIRGINIA

Present:    Judges Petty, Alston and Russell
Argued at Lexington, Virginia


CHARLES WILMER, S/K/A
  CHARLES RONALD WILMER, II

                                                        MEMORANDUM OPINION* BY
v.        Record No. 0654-16-3                          JUDGE ROSSIE D. ALSTON, JR.
                                                        AUGUST 29, 2017

COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF THE CITY OF SALEM
                                Charles N. Dorsey, Judge

                Suzanne Moushegian (Moushegian Law, P.L.L.C., on brief), for
                appellant.

                Eugene Murphy, Senior Assistant Attorney General (Mark R.
                Herring, Attorney General, on brief), for appellee.


        Charles Ronald Wilmer, II (appellant) appeals his two convictions for causing an act or

omission, which rendered a child abused or neglected in violation of Code § 18.2-371.  Appellant

argues that the trial court erred in denying his motion to strike.  Specifically, appellant argues

that the evidence was insufficient to find that he "willfully contributed to, encouraged, created,

caused or omitted a condition that rendered [his] children abused and neglected" because the

Commonwealth failed to prove abuse and neglect as defined in Code § 16.1-228(1) and (5).  We

agree, and reverse the decision of the trial court.

                                        BACKGROUND

        Appellant was originally indicted for felony child abuse and neglect pursuant to Code

§ 18.2-371.1.  On December 4, 2014, prior to appellant's bench trial, the trial court granted the

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Commonwealth's motion to amend the charges to misdemeanor child neglect pursuant to Code § 18.2-371.

The evidence presented at trial established that on April 8, 2014, Bobby Hall, a maintenance worker at appellant's apartment building, was changing filters and providing other preventative maintenance around appellant's building. When Hall arrived at appellant's apartment, he knocked but there was no response. After knocking a second time, Hall took out his keys and shook them. He then entered the apartment and indicated that he was with the maintenance staff, but still received no response.

Upon entering the apartment, Hall smelled ammonia from cat urine but did not observe any litter boxes. Hall saw a ferret in a cage, and noticed that there were only a few things in the apartment. Hall then observed "a little boy, [wearing a diaper] behind [a] baby gate in the den/bedroom" of the apartment. Hall stated that he "could tell the diaper was full [and that the boy] looked about as white as [a] piece of paper." He walked through the apartment and noticed what appeared to be children's bedrooms were "bare." Hall also heard a dog that was "freaking out, trying to eat his way through the closet." Hall further testified that he then knocked on the bedroom door but there was no response.

Hall entered the master bedroom and saw a woman asleep. Hall testified that after waking the woman, she "seemed pretty incoherent to what was going on." Hall informed the woman that the children in the apartment appeared to need attention, but the woman did not do anything about it. Throughout the apartment, Hall counted eighteen cats, one ferret, and a "very angry" dog. Significantly, Hall stated that appellant was not present on that day. On cross-examination, Hall indicated that before April 8, 2014, there had been several complaints due to the strong smell of ammonia emanating from the apartment.

Officer Lawrence Stump testified that upon approaching the apartment building he could smell a strong cat urine odor coming from the building itself and that the smell got stronger as he approached appellant's apartment.

Officer A.L. Gwin testified that, upon arriving at the apartment, he observed "a large number of cats, extremely bad odor of cat urine, [and] a middle aged female alone by herself with two small toddler aged children."

Melissa Cook, a family services specialist and child protective services investigator, testified that she noticed the smell of cat urine before entering the apartment. When she walked into the living room, there was a cage with a ferret. There were also multiple cats throughout the apartment. Off of the living room was a bedroom with a little boy laying on a toddler bed with no sheets, and wearing a sagged diaper. Down the hallway past the dining area and kitchen, there was another bedroom, and then straight-ahead was a little girl's bedroom. The little girl was standing at a gate with a "sagging, urine soaked diaper." Cook testified that appellant was not home when she arrived, but indicated that the little girl's mother was present. The little boy's mother later arrived at the apartment. Cook stated that she took both of the children into custody due to the condition of the apartment and her concerns with the parental supervision. Upon requesting clothing for the children, the mothers were only able to provide Cook with the clothing that the children had on when they left the home.

When appellant followed up with Cook, appellant admitted that the urine smell was bad and indicated that they were working to clean it up. Appellant also stated that the children decided to put themselves down for a nap, and because they were napping, the little girl's mother napped as well. However, he did not know how the baby gates got up in front of the bedroom doors. Appellant further testified that the mothers slept while he was at work because they worked during the evenings, and it was not unusual for the gates to be put up to keep the children

safe. Cook stated that appellant did not seem overly concerned with the fact that there were two toddlers at home while the mothers slept.

Appellant claimed ownership of sixteen of the cats, and explained to Cook that he inherited them from his aunt who committed suicide and that he was using them to treat his post-traumatic stress disorder. Appellant indicated, to one of the officers, that he was trying to find homes for the cats, but that he did not want to give them to shelters because he was afraid they would be killed. Appellant also told Cook that he, along with the children and their mothers, had been locked out of their last apartment and that all of their furniture was still inside their previous home. Cook further testified that appellant took care of the cats following the children's removal. On cross-examination, Cook indicated that other than the smell of the home, the shelter was adequate and that her main concern was apparent lack of parental supervision of the two children.

After the Commonwealth rested its case, appellant moved to strike the evidence arguing that the Commonwealth failed to prove that appellant contributed to, encouraged, caused an act, omission or condition that rendered abuse and neglect. Specifically, appellant argued that there was a lack of supervision by the children's mothers and that the Commonwealth failed to prove that appellant knew that the mother would sleep when there was only one parent in the apartment. The trial court overruled appellant's motion. Appellant rested his case without presenting evidence, at which point he renewed his motion to strike. The trial court again overruled his motion.

Ultimately, the trial court found appellant guilty of both offenses, and sentenced appellant to twelve months in jail on each of the two convictions, with all but ninety days suspended. This appeal followed.

ANALYSIS

"When ruling upon the sufficiency of the evidence, we grant the judgment of a trial court sitting without a jury the same weight as a jury verdict and will not disturb that judgment on appeal unless it is plainly wrong or without evidence to support it." Ellis v. Commonwealth, 29 Va. App. 548, 554, 513 S.E.2d 453, 456 (1999). On appeal, we must view "the evidence and all reasonable inferences flowing therefrom . . . in the light most favorable to the prevailing party in the trial court." Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). In so doing, this Court "discards 'the evidence of the accused in conflict with that of the Commonwealth, and regard[s] as true all the credible evidence favorable to the Commonwealth.'" Miller v. Commonwealth, 64 Va. App. 527, 536, 769 S.E.2d 706, 710 (2015) (quoting DeAmicis v. Commonwealth, 31 Va. App. 437, 440, 524 S.E.2d 151, 152 (2000) (*en banc*)). If sufficient evidence exists to support the convictions, "the reviewing appellate court will not 'substitute its own judgment for that of the trier of fact, even if its opinion might differ from the conclusions reached by the [fact finder].'" Id. at 536-37, 769 S.E.2d at 710 (quoting Jordan v. Commonwealth, 286 Va. 153, 156-57, 747 S.E.2d 799, 800 (2013)). However, an appellate court may reverse the judgment of the trial court "if the judgment 'is plainly wrong or without evidence to support it.'" Coomer v. Commonwealth, 67 Va. App. 537, 545, 797 S.E.2d 787, 790 (2017) (quoting Crawford v. Commonwealth, 281 Va. 84, 112, 704 S.E.2d 107, 123 (2011)).

Appellant challenges his misdemeanor convictions under Code § 18.2-371, contending that the evidence was insufficient to prove his actions constituted a "willful" act or omission, as that term has been interpreted under Virginia law. In finding appellant guilty, the trial court focused primarily on the theory that the abuse or neglect fell within the definition provided in Code § 16.1-228(1) and (5).

Criminally culpable child abuse or neglect is particularly defined in Code § 18.2-371, which states, in relevant part:

> Any person 18 years of age or older, including the parent of any child, who (i) *willfully* contributes to, encourages, or causes any act, omission, or condition that renders a child delinquent, in need of services, in need of supervision, or abused or neglected as defined in [Code] § 16.1-228 . . . is guilty of a Class 1 misdemeanor.

(Emphasis added). Per Code § 16.1-228(1), "abused or neglected child" includes a child "[w]hose parents *or other person responsible for his care* creates or inflicts, threatens to create or inflict, or allows to be created or inflicted upon such child a physical or mental injury by other than accidental means." (Emphases added). Code § 16.1-228(5) refers to a child "[w]ho is without parental care or guardianship caused by the unreasonable absence or the mental or physical incapacity of the child's parent [or] guardian."[1]

Appellant argues that the Commonwealth failed to prove that he "willfully" acted in a way that constituted child abuse or neglect. "To be willful, conduct 'must be knowing or intentional, rather than accidental, and be done without justifiable excuse, without ground for believing the conduct is lawful, or with a bad purpose.'" Jones v. Commonwealth, 272 Va. 692, 699, 636 S.E.2d 403, 406 (2006) (quoting Commonwealth v. Duncan, 267 Va. 377, 384, 593 S.E.2d 210, 214 (2004)). In child abuse cases, "willful" means "an intentional, purposeful act or omission in the care of a child by one responsible for such child's care." Duncan, 267 Va. at 385, 593 S.E.2d at 215.

---

[1] Parental care "is quite simply the care provided by a parent to his or her child." Miller, 64 Va. App. at 538, 769 S.E.2d at 711; see also Wood v. Commonwealth, 57 Va. App. 286, 300-01, 701 S.E.2d 810, 817 (2010) (recognizing that the level of care needed depends upon the degree of vulnerability of the child and that "mature judgment" is "necessary for parents of small children").

Determining whether an act is willful under the statute is decided on a case-by-case basis, Miller, 64 Va. App. at 544, 769 S.E.2d at 714 (citing Carosi v. Commonwealth, 280 Va. 545, 556, 701 S.E.2d 441, 447 (2010)), and on appeal we consider "the gravity and character of the possible risks of harm; the degree of accessibility of the parent; the length of time of abandonment; the age and maturity of the children; [and] the protective measures, if any, taken by the parent," id. (quoting Barnes v. Commonwealth, 47 Va. App. 105, 113, 622 S.E.2d 278, 282 (2005)).  Under the circumstances in this case, willfulness is analogous to criminal negligence which

> is established by showing that the defendant's acts or omissions were "of a wanton or willful character . . . show[ing] a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable result of [her] acts."

Carosi, 280 Va. at 556, 701 S.E.2d at 447 (quoting Brown v. Commonwealth, 278 Va. 523, 528-29, 685 S.E.2d 43, 46 (2009)).  Ultimately, the consideration is one in which we look at the totality of the evidence presented.  See Coomer, 67 Va. App. at 547, 797 S.E.2d at 792.

Here, appellant relies on Ellis v. Commonwealth, 29 Va. App. 548, 513 S.E.2d 453 (1999),[2] arguing that mere negligence alone is insufficient to prove criminal abuse or neglect under the statute.  In Ellis, we defined "bad purpose," stating:

> While appellant, without question, purposefully and intentionally left her apartment to visit a friend in another residential building, the intent which is relevant to our determination of "bad purpose" does not relate simply to *why* she left the apartment.  Rather, it relates to the *degree to which she was aware of the danger* when leaving her children unattended.

---

[2] In Ellis, appellant was convicted of child neglect under Code § 18.2-371.1(A).  29 Va. App. at 551, 513 S.E.2d at 454.

29 Va. App. at 555, 513 S.E.2d at 456-57 (emphasis added). We also stated that "inattention and inadvertence have not been heretofore equated with actions taken willfully, thus making them subject to criminal penalty." Id. at 556, 513 S.E.2d at 457. In Ellis, the mother left her children unattended in her apartment and walked to a friend's apartment building nearby. Id. at 552, 513 S.E.2d at 455. Shortly after leaving, a fire started in mother's apartment. Id. Both children required emergency care. Id.

Despite the actions or inactions taken by the mother, this Court found that there was no evidence proving that she did so with an intent to injure, nor was there evidence to support the conclusion that she acted with knowledge or consciousness that her children were likely to be injured. Id. at 555, 513 S.E.2d at 457. We noted that while the mother was negligent in forgetting to turn off the gas burner after lighting a cigarette and in not checking that the smoke detectors were functioning properly, "something more than negligence must be proved beyond a reasonable doubt to support [mother's] conviction." Id.

Here, in critical discernment of the factual circumstances of this case, and viewing the evidence as a whole in the light most favorable to the Commonwealth, we cannot conclude that appellant created or inflicted a physical or mental injury upon the children,[3] see Code § 16.1-228(1), nor can we say that appellant *caused* the children to be without care by an unreasonable absence, see Code § 16.1-228(5). Code § 16.1-228(1) provides that the statute covers abuse and neglect by "parents or *other person[s] responsible for his* care." (Emphasis added). Thus, both, or either of the mothers independently, were responsible for the children's care during the time that appellant left the children with them. While the statutory responsibility

---

[3] The alleged violation of Code § 16.1-228(1) was not established in this case because there was no evidence that the children suffered any injury. While the Commonwealth references the "flat affect" as the mental injury, we find no evidence causally linking the flat affect of the children to any act or omission of appellant.

of the mothers does not absolve appellant of all obligations, appellant's actions herein simply do not rise to the level of criminal culpability.

Furthermore, neither of the children was injured or harmed in this case. Thus, the mere possibility that the children *could have* been harmed does not meet the evidentiary threshold necessary to prove child abuse and neglect under Code § 18.2-371. Here, the Commonwealth provided no evidence that appellant had any knowledge of the mothers leaving, or being absent or asleep at the same time. Nor is there any evidence that appellant knew the conditions of the apartment could harm his children to the extent necessary under the statute. Significantly, there is no evidence that appellant acted with an intent, circumstantially or otherwise, to injure his children. See Ellis, 29 Va. App. at 555, 513 S.E.2d at 457. While the condition of the apartment and the lack of supervision may have presented a mere possibility of harm, the children were, nonetheless, placed in the care of their mothers while appellant worked.

In this case, even under our highly deferential standard, any absence of supervision of the children cannot be attributed to appellant. The children's mothers were tasked with supervising the children while appellant worked.[4] As such, given that appellant placed the children in the care of both mothers, appellant did not have the *mens rea* necessary to prove that he acted willfully or with "reckless or indifferent disregard" for his children. See Carosi, 280 Va. at 556, 701 S.E.2d at 447 (quoting Brown, 278 Va. at 528-29, 685 S.E.2d at 46).

As such, we cannot find that appellant's conduct was willful. For these reasons, we reverse the trial court.

Reversed and final judgment.

---

[4] But cf. Duncan, 267 Va. at 385, 593 S.E.2d at 215 (reinstating appellant's conviction where the evidence showed that appellant left his infant son for several hours with people he barely knew).