UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, O'Brien and Raphael
Argued at Lexington, Virginia


JULIE KAROLE GARTEN

                                              MEMORANDUM OPINION* BY
v.         Record No. 0258-23-3              JUDGE MARY GRACE O'BRIEN
                                                     MAY 21, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRY COUNTY
James R. McGarry, Judge

Lauren Brice, Assistant Public Defender (Virginia Indigent Defense
Commission, on briefs), for appellant.

Allison Mentch, Assistant Attorney General (Jason S. Miyares,
Attorney General; John Beamer, Assistant Attorney General, on
brief), for appellee.


Following a bench trial, Julie Karole Garten was convicted of felony child endangerment

and reckless driving and sentenced to 3 years and 12 months' incarceration, all suspended.  On

appeal, Garten challenges the sufficiency of the evidence for child endangerment.[1]  She further

contends that the court erred by permitting the Commonwealth to cross-examine her about her

prior involvement with Child Protective Services.  For the following reasons, we affirm.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Garten does not challenge her conviction for reckless driving.

BACKGROUND[2]

On November 30, 2021, at approximately 2:00 a.m., Henry County Sheriff's Deputy Robert Tatum observed a car "driving all over the road." Garten was later identified as the driver, and her child was in a car seat in the back.

Tatum, who was off-duty and driving his personal truck, saw Garten's car "swerving, braking, turning [its] headlights on and off" and driving "into oncoming traffic." He called 911 and reported that the car almost struck him "three or four times" and nearly "hit the guardrails several times." Tatum noticed the child in the back seat and followed the car into the parking lot of a Kia dealership, where it sat with its hazard lights activated and headlights flashing. Garten then drove to a nearby convenience store and paused by the gas pumps for "a minute or so" before pulling back onto the road.

Responding to the 911 call, Virginia State Police Trooper Luke D'Albero arrived at approximately 2:15 a.m. and found Garten's car "stopped in the middle of" the road. D'Albero spoke with Garten and observed that she was very "argumentative" and "erratic." She slurred her speech and was "either not willing or unable to answer the majority of [his] questions." At trial, Tatum confirmed that Garten was "[v]ery erratic and could not answer [questions]." D'Albero arrested Garten for public intoxication after approximately 45 minutes on the scene.[3]

Another officer took Garten's child from the car seat and stayed with the child until a representative from Child Protective Services arrived. When a CPS employee met with Garten

---

[2] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we "discard the evidence of the accused in conflict with that of the Commonwealth[] and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[3] The officers did not conduct any field sobriety or drug tests. Garten was ultimately not prosecuted for public intoxication.

in jail later that day, Garten was belligerent and refused to provide basic information such as the child's name or date of birth.

Garten testified in her defense that she took her child out for a drive to help him sleep, which had worked "many times" in the past. She stated that the car was not hers and it began to malfunction as she drove, which caused the lights to flicker. She claimed that she immediately put on her hazard lights and denied that she "almost hit" Tatum's truck. Instead, as Garten told the court, she only switched lanes once to pull into the Kia dealership parking lot. Garten testified that she noticed Tatum's truck behind her and believed he may have been there to help, but she "hauled out of there" when no one got out of the truck. According to Garten, she went to the convenience store for gas and saw bags over the pumps; when she left to find another store, D'Albero pulled behind her. Garten denied using drugs or alcohol that night and claimed that she "may have come [across] as erratic" because D'Albero made her nervous and the truck had been following her.

Garten volunteered that she "would never intentionally put [her] child in any danger" and she "would never endanger [her children's] lives." During cross-examination, the Commonwealth sought to impeach Garten with questions about her previous involvement with CPS. Garten objected and argued that the questions were not relevant because "someone doesn't have to have done anything to endanger their child to have a run-in with" CPS. The court overruled the objection, finding that Garten had "put her credibility at issue." Garten admitted that CPS had investigated her for "truancy issues" related to her other children. The court then reiterated it would only allow "evidence that would discredit" Garten's prior statement about never endangering her child's life and excluded as irrelevant any testimony concerning "truancy or some other menial issues." At that point, Garten acknowledged that CPS removed two of her other children because her home was in "poor condition" and that she had tested positive for

- 3 -

drugs both at the time of the CPS investigation and approximately one week after the November 30 arrest.

At the close of all evidence, Garten moved to strike, arguing the evidence failed to establish that she "took a willful act that showed reckless disregard for a child's life." She argued that Tatum's testimony corroborated her claim that her car malfunctioned, and she attributed her driving behavior and demeanor with D'Albero to feeling "a little bit tired" and to the "harrowing experience" of being followed by the unfamiliar truck. The Commonwealth responded that Garten's only testimony about the car malfunction was that the lights flickered, not that any malfunction caused the car to swerve. The Commonwealth also pointed out that Tatum's testimony and 911 call contradicted Garten's claim that she only changed lanes once to pull into the dealership parking lot.

In denying Garten's motion and convicting her of both offenses, the court relied on her "actions on the road" and determined that Garten "did exactly what . . . Tatum observed." The court rejected Garten's contention that she experienced mechanical malfunctions and found that Tatum's "unattached" testimony "completely . . . impeached" her explanation. The court determined that when Garten "cross[ed] the center line," "swerve[d] into the oncoming lanes," "swerve[d] back," "nearly hit the guardrails," and drove "all over the road," she "very clear[ly]" "created the probability of a substantial risk of death or serious injury to [her] child."

ANALYSIS

I. Sufficiency of the Evidence

Garten contends the evidence was insufficient to prove that her actions were "willful" because she "lacked the knowledge and awareness" that her actions "would likely result in injury." Garten also argues that her actions "did not rise to the level of criminal negligence."

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The relevant issue on appeal is, 'upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Lambert v. Commonwealth*, 298 Va. 510, 515 (2020) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "This deferential standard of review 'applies not only to the historical facts themselves, but the inferences from those facts as well.'" *Johnson v. Commonwealth*, 53 Va. App. 79, 100 (2008) (quoting *Crowder v. Commonwealth*, 41 Va. App. 658, 663 n.2 (2003)). "The inferences to be drawn from proven facts, so long as they are reasonable, are within the province of the trier of fact." *Id.* (quoting *Hancock v. Commonwealth*, 12 Va. App. 774, 782 (1991)).

Garten was convicted of violating Code § 18.2-371.1(B)(1), which required proof that (1) she committed a "willful act or omission in the care" of a child; and (2) the act or omission was "so gross, wanton, and culpable as to show a reckless disregard for human life."

"The term 'willful act' imports knowledge and consciousness that injury will result from the act done. The act done must be intended or it must involve a reckless disregard for the rights of another and will probably result in an injury." *Barrett v. Commonwealth*, 268 Va. 170, 183 (2004) (quoting Code § 18.2-371.1(B)(1)). A parent's act is "willful" under the statute "if an objectively reasonable person would understand that injury to the child is likely to result." *Hannon v. Commonwealth*, 68 Va. App. 87, 94 (2017).

Garten admits that she voluntarily put her son in a car and took him for a ride. The evidence in the light most favorable to the Commonwealth established that Garten was "driving all over the

road," "swerving [and] braking," and driving "into oncoming traffic." She almost collided with Tatum's truck "three or four" times and nearly "hit the guardrails several times." An objectively reasonable person would understand that this reckless and dangerous driving behavior "will probably result in an injury" to her child in the back seat. *Barrett*, 268 Va. at 183; *see also Hannon*, 68 Va. App. at 94.

Garten contends that mechanical issues interfered with her ability to control the car and thus negated any "willfulness" of her driving behavior. The court rejected this factual premise and hypothesis of innocence, however, and its finding is not plainly wrong. *See Ervin v. Commonwealth*, 57 Va. App. 495, 519 (2011) (en banc) (stating that "[t]he rejection of a hypothesis of innocence 'is binding on appeal unless plainly wrong'" (quoting *Archer v. Commonwealth*, 26 Va. App. 1, 12-13 (1997))). On appeal, we ask "only whether a reasonable finder of fact could have rejected the defense theories and found the defendant guilty beyond a reasonable doubt." *Thorne v. Commonwealth*, 66 Va. App. 248, 254 (2016).

Garten's testimony about her driving behavior was contradicted by Tatum's 911 call and testimony, and the court found that she was not credible. "The fact finder, who has the opportunity to see and hear the witnesses, has the *sole* responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (quoting *Commonwealth v. Taylor*, 256 Va. 514, 518 (1998)). Based on the record before us, including the court's credibility determination, it was reasonable for the court to reject Garten's claim that mechanical issues interfered with her driving and to find that she acted willfully.

Next, Garten contends the evidence failed to prove criminal negligence. Specifically, she argues that without offering "substantial, objective evidence of intoxication," the Commonwealth failed to prove that her conduct was "so gross, wanton, and culpable as to show a reckless disregard

for human life" under Code § 18.2-371.1(B)(1). She submits that "Virginia law requires consideration of the level of intoxication to determine whether [a defendant's] conduct rises to criminal negligence," relying on *Coomer v. Commonwealth*, 67 Va. App. 537 (2017). We disagree.

Although a driver's intoxication may factor into a finding of criminal negligence, it is not essential. Instead, a court must consider "the totality of a defendant's conduct and the circumstances surrounding it with respect to whether the evidence was sufficient to establish that . . . [the] conduct was gross, wanton, and culpable." *Coomer*, 67 Va. App. at 549. In *Coomer*, we reversed a conviction for child endangerment under Code § 18.2-371.1(B)(1) where the driver's "intoxication standing alone" was insufficient to prove criminal negligence. *Id.* at 550. The other evidence showed that the driver was "well below the speed limit," "avoided a serious accident," and was not "severely impaired" according to the arresting officer's testimony. *Id.* Thus, the driving behavior lacked "the probability of a substantial risk of death or serious injury to [the] child." *Id.* at 551 (quoting *Morris v. Commonwealth*, 272 Va. 732, 739 (2006)).

Opposite circumstances are presented here: although the record does not establish Garten's intoxication or impairment, the totality of her conduct and surrounding circumstances were sufficient to satisfy the "gross, wanton, and culpable" standard of criminal negligence. *See id.* at 549. The court convicted Garten based on her "actions on the road" and determined that Garten drove just as Tatum described. The evidence proved that, with a child in the car, she was "driving all over the road," "swerving [and] braking" and driving into oncoming traffic. She almost collided with Tatum's truck "three or four" times and nearly "hit the guardrails several times." She ultimately stopped in the middle of the road. And, although not specifically cited in the court's ruling, Garten continued to behave erratically with the trooper and later with the CPS employee in jail, refusing to explain her actions or provide basic information about her child. *See Bolden v. Commonwealth*, 275 Va. 144, 147 (2008) (stating that when reviewing a challenge to the

sufficiency of the evidence, an appellate court "is not limited to the evidence mentioned . . . by the trial court in its ruling" but "must consider all the evidence admitted at trial that is contained in the record").

Criminally negligent driving behavior does not require a specific finding of intoxication or impairment. *Cf. Zirkle v. Commonwealth*, 189 Va. 862, 868 (1949) (stating, in the context of involuntary manslaughter, that "the dominant issue is not whether the accused was drunk or sober, but whether he was operating his automobile in the manner that the evidence for the Commonwealth tended to prove").[4] Considering the totality of Garten's conduct and surrounding circumstances, we cannot say that no rational fact finder could have found the evidence sufficient to prove that Garten's conduct was "so gross, wanton, and culpable as to show a reckless disregard for human life." Code § 18.2-371.1(B)(1).

## II. Cross-Examination about CPS

Garten argues that the court erred by allowing cross-examination about her past involvement with CPS because the questioning elicited "irrelevant and inadmissible evidence of prior bad conduct."

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)).

"[A] criminal defendant may introduce 'evidence of his good character for the trait involved in the particular prosecution.'" *Gravely v. Commonwealth*, 13 Va. App. 560, 562 (1992) (quoting *Byrdsong v. Commonwealth*, 2 Va. App. 400, 403 (1986)); *accord Barlow v.*

---

[4] The Supreme Court ultimately reversed the involuntary manslaughter conviction on other grounds. *Zirkle*, 189 Va. at 873-77.

*Commonwealth*, 224 Va. 338, 340 (1982). "Once the defendant puts his good character in issue, . . . the Commonwealth may introduce evidence of his bad character through cross-examination . . . ." *Gravely*, 13 Va. App. at 562; *see also* Va. R. Evid. 2:404(a)(1) (permitting the prosecution's rebuttal evidence of a defendant's character trait when "[e]vidence of a pertinent character trait of the accused [is] offered by the accused"). We review a court's evidentiary decisions, including the scope of cross-examination into character evidence, for an abuse of discretion. *Gravely*, 13 Va. App. at 563.

Garten testified during direct examination that she "would never intentionally put [her] child in any danger" and that she "would never endanger [her children's] lives." Thus, she offered evidence to prove good character for a trait relevant to the prosecution: she professed that she was a conscientious caretaker who would never endanger a child. *See Gardner v. Commonwealth*, 288 Va. 44, 50 (2014) ("[A] defendant is not limited solely to reputation evidence regarding truthfulness[] but may offer evidence to prove good character for any trait relevant in the case."). Code § 18.2-371.1(B)(1) required proof that Garten acted in reckless disregard for her child's life. Accordingly, the court did not abuse its discretion in finding that Garten put at issue a character trait relevant to the offense and "opened the door" to cross-examination concerning that subject.

The court limited the cross-examination to "evidence that would discredit" Garten's prior statement about never endangering a child's life and excluded as irrelevant any testimony about "truancy or some other menial issues." Although the court made this ruling only after Garten admitted that CPS had investigated her for "truancy issues" related to her other children, "[a]bsent clear evidence to the contrary, '[a] trial court is presumed to apply the law correctly' and is 'presumed to have considered the presented evidence "only in its permissible context."'" *Suhay v. Commonwealth*, 75 Va. App. 143, 161 (2022) (second alteration in original) (first

quoting *Shenk v. Shenk*, 39 Va. App. 161, 169 (2002); and then quoting *Breeden v. Commonwealth*, 43 Va. App. 169, 188 (2004)). To the extent Garten challenges this evidence on appeal, we find no abuse of discretion because we presume the court did not consider it.

Additionally, the testimony that the court did consider was permissible. After the court limited the cross-examination, Garten testified that CPS previously removed her children due to the "poor condition" of her home and that she had tested positive for drugs both at the time of the removal and soon after her arrest for the driving incident underlying this case. Again, the court admitted this evidence only to the extent it would discredit Garten's prior statement about never endangering her child's life. In other words, the evidence was not admitted as proof that Garten acted in conformity on the night of the incident, but instead to rebut her character evidence that she would never endanger her children. The court's allowance of Garten's cross-examination for this evidentiary purpose was not an abuse of discretion. *Bunch v. Commonwealth*, 225 Va. 423, 438 (1983) (stating that when a witness "open[s] the door" to cross-examination on a subject, the "permissible scope" becomes "a matter for the exercise of discretion by the trial court").

CONCLUSION

Because the evidence was sufficient to prove felony child endangerment under Code § 18.2-371.1(B)(1), and because the court did not err in allowing the challenged cross-examination, we affirm Garten's conviction.

*Affirmed.*