Present:  All the Justices

ANGELA MARIE CAROSI

v.  Record No. 100143

OPINION BY
JUSTICE LAWRENCE L. KOONTZ, JR.
November 4, 2010

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the Court of Appeals erred in finding that three convictions for child endangerment in violation of Code § 40.1-103(A) were supported by sufficient evidence that the defendant endangered the lives of her three children by permitting illegal drugs to be kept in her home in a place accessible to the children.

BACKGROUND

When the sufficiency of the evidence is challenged on appeal of a criminal conviction, we review "the evidence in the light most favorable to the Commonwealth, the prevailing party in the circuit court, and we accord the Commonwealth the benefit of all reasonable inferences deducible from the evidence."  Brown v. Commonwealth, 278 Va. 523, 527, 685 S.E.2d 43, 45 (2009).  When so viewed, the evidence adduced at trial showed that shortly after 10 P.M. on February 28, 2008, Virginia State Police Special Agent Richard Boyd, Jr. executed a search warrant at 214 Oak Grove Lane in Stafford County.  This residence is where Angela Marie Carosi lived with her three children, ages 10, 5 and 3, all of whom were present in

the home at the time of the search.  Cavell Thomas, the father of two of the children, also frequently stayed in the residence.  However, Thomas was not present at the time of the search, as he was being held in custody on drug charges in another jurisdiction.

In the master bedroom of the home, which Carosi shared with Thomas, Boyd found a glass jar containing marijuana, two "bongs" or smoking devices, a digital scale with a powdery residue, and plastic bags in an upper cabinet of an unlocked wardrobe.  In an unlocked safe inside the wardrobe, Boyd also found prescription bottles containing oxycodone and methylenedioxymethamphetamine, commonly known as MDMA or ecstasy.[1]  On top of the safe was a plate with two razor blades and powdered cocaine.  Boyd further observed that there was no lock on the master bedroom door and that all the drugs in the wardrobe would be within the reach of a small child.

Boyd subsequently testified at trial that Carosi told him the smoking devices were in the wardrobe, that she kept clothing in the drawers of the wardrobe, and that the safe

_____

[1] There is conflicting testimony in the record as to the precise location of the safe and whether the locking mechanism of the safe was functional or not; however, it is undisputed that the safe was not locked and in a place accessible to the children when Boyd conducted the search.

belonged jointly to her and Thomas.  She denied any knowledge of the drugs that Boyd had found inside the safe.

On August 4, 2008, the Stafford County Grand Jury indicted Carosi for three counts of child abuse in violation of Code § 18.2-371.1(B)(1) and three counts of child endangerment in violation of Code § 40.1-103(A), both offenses being Class 6 felonies.[2]  Carosi was also indicted for possession of marijuana with intent to distribute in violation of Code § 18.2-248.1 and three counts of possession of cocaine, oxycodone, and MDMA in violation of Code § 18.2-250. The Commonwealth subsequently dismissed the felony child abuse charges by nolle prosequi.

On March 4, 2009, a two-day jury trial on the child endangerment and drug possession charges commenced in the Circuit Court of Stafford County.  Boyd testified concerning

---

[2] In its sentencing order, the circuit court used the term "Child Neglect" to describe the offense defined by Code § 18.2-371.1(B)(1) and "Child Cruelty" to describe the offense defined by Code § 40.1-103(A).  Although these terms track in part the titles of the respective code sections, they do not fully convey the nature or elements of the two offenses and the distinction between them.  For use in this opinion, we have adopted the terms used by the Court of Appeals in its order refusing Carosi's appeal and in King v. Commonwealth, 56 Va. App. 133, 692 S.E.2d 249 (2010), in which the Court of Appeals determined that child abuse and child endangerment are not the same offense, nor is one a lesser-included offense of the other and, thus, convictions under both statutes in a single trial does not violate double jeopardy principles.  Id. at 138-39, 692 S.E.2d at 252.

the February 28, 2008 search of Carosi's home as described above.  After presenting evidence from a forensic expert, who identified the marijuana, cocaine, oxycodone, and MDMA, the Commonwealth rested its case.

Carosi moved to strike the child endangerment charges, contending that "[t]here is no evidence whatsoever that the children knew that there were drugs in the house.  There is no evidence whatsoever that there was drug use going on in front of these children.  There [is] no evidence whatsoever that [the children] actually had access to the bedroom and they could go in there."  Thus, Carosi contended that the jury would have to speculate as to whether the children had actually been placed in a situation endangering their lives through her alleged willful or negligent conduct.

The Commonwealth responded that the children had "access to dangerous drugs" because there were no "locks or any prohibitions on the door to prohibit the [children] from coming into their mother's room."  Thus, the Commonwealth asserted that the elements of Code § 40.1-103(A) could be satisfied "solely on the children's access to the Schedule I or Schedule II drugs and marijuana."

Carosi responded that children merely having potential access to drugs was different from a case where "there is drug dealing going on in front of the children."  She contended

4

that the possibility of access to drugs is "no different than having a cabinet under the sink where you keep dangerous . . . cleaning supplies." She reiterated that the evidence did not show that "there was anything going on in front of the children or that the children even knew [the drugs were] there and had free access into the bedroom." The circuit court denied the motion to strike the child endangerment charges.

Thereafter, Thomas was called as a witness for the defense. Thomas took full responsibility for the drugs found in the home, stating that the wardrobe was his "and I wanted to hide [the drugs] there." He denied that Carosi kept any belongings in the wardrobe and maintained that he did not use drugs in the home. On cross-examination, Thomas gave equivocal answers to a series of questions concerning whether any of Carosi's clothing was kept in the wardrobe. Nevertheless, he insisted that "all the drugs were mine" and that, other than the marijuana, he had placed the drugs in the wardrobe the day before the search was conducted.

Concerning ownership of the safe, Thomas testified that while he purchased the safe, Carosi might have told Boyd that she and Thomas owned the safe jointly because "everything like mines [(sic)], is basically hers . . . . if she wanted to claim the safe, she could." He further testified that although there were two bongs in the wardrobe, both belonged

5

to him.  Asked why he would keep two bongs in the home if Carosi did not smoke marijuana, as he maintained, Thomas replied that the two were "total different instruments if you look at them clearly" and that they were of "[d]ifferent styles."

The Commonwealth concluded its cross-examination of Thomas by impeaching him through prior inconsistent statements he had made to a probation officer for a pre-sentence report following his conviction on drug trafficking charges. Specifically, the Commonwealth established that Thomas had denied using marijuana, cocaine, or other drugs recently. Thomas responded either that he could not recall what statements he had made or that he did not know what had been stated in the pre-sentence report.

Carosi testified on her own behalf.  She maintained that Thomas brought the wardrobe to the home.  Carosi denied that she kept any clothing or other property in the wardrobe, though she conceded that she sometimes would borrow a pair of Thomas' socks that were kept in the wardrobe.  She further testified that while her children "[s]ometimes" would go into her bedroom, she had never seen them playing in the wardrobe.

Carosi specifically denied having any knowledge of the drugs or the bongs, and denied that she smoked marijuana or used any type of illegal drugs.  She further maintained that

6

Thomas did not use drugs in the home, though she had "seen him take pills" for pain after he had two teeth pulled.

On cross-examination, Carosi denied that she had told Boyd that she kept clothes in the wardrobe. She also denied having told Boyd that the bongs were located in the wardrobe. Asked whether she could offer a reason that Boyd would fabricate this testimony, Carosi replied that she had been "overcritical" of him during the search of her home and had "told him how to do his job better." Carosi also testified that she had purchased the safe for Thomas as a gift and did not "know why he said he purchased it."

After the Commonwealth called the probation officer who had prepared Thomas' pre-sentence report as a rebuttal witness, Carosi renewed her motion to strike the child endangerment charges, asserting that there was no evidence that the children "were actually effected in any way and that they even knew about" the drugs. The circuit court again denied the motion to strike.

The case was submitted to the jury, which returned verdicts acquitting Carosi of the four drug possession offenses, but convicted her of the three child endangerment charges. The jury fixed her punishment at a fine of $500 for each offense. Carosi waived the preparation of a pre-sentence report. After receiving testimony from Carosi and her sister,

7

the circuit court confirmed the jury's verdict and imposed $1500 in fines on Carosi.

Carosi filed a petition for appeal to the Court of Appeals. The sole issue asserted in her petition was that the evidence was insufficient to support the three convictions for felony child endangerment. In a per curiam order, the Court of Appeals refused Carosi's petition. Citing Barnes v. Commonwealth, 47 Va. App. 105, 110-11, 622 S.E.2d 278, 281 (2005), the Court noted that proof of child endangerment "requires only a threshold mens rea showing of 'criminal negligence.'" Carosi v. Commonwealth, Record No. 0738-09-4, slip op. at 2 (October 7, 2009). Relying upon Jones v. Commonwealth, 272 Va. 692, 700, 636 S.E.2d 403, 407 (2006), the Court held that the jury could have reasonably found that the "act of leaving illegal narcotics in a place accessible to her children was grossly negligent" and was sufficient to prove the mens rea necessary to establish Carosi's criminal negligence "based on common knowledge[] that there are inherent dangers in placing [illegal drugs] within reach of an unattended child." Carosi, slip op. at 3 (internal quotation marks omitted). Carosi requested a review of this judgment by a three-judge panel, which refused the petition for the reasons stated in the per curiam order. This appeal followed.

DISCUSSION

In relevant part, Code § 40.1-103(A) provides, "It shall be unlawful for any person . . . having the custody of any child willfully or negligently to cause or permit the life of such child to be endangered."[3] Although the Court of Appeals has reviewed many convictions under Code § 40.1-103(A), we last considered the application of the child endangerment statute in Lovisi v. Commonwealth, 212 Va. 848, 188 S.E.2d 206 (1972). Since that time, we have considered a number of cases involving the felony child abuse statute, Code § 18.2-371.1(B)(1), including most recently Jones and Morris v. Commonwealth, 272 Va. 732, 636 S.E.2d 436 (2006). Although the two statutes define separate offenses, it is clear that the mens rea for each offense can be satisfied by a showing of

------

[3] In Commonwealth v. Carter, 21 Va. App. 150, 155, 462 S.E.2d 582, 585 (1995), the Court of Appeals held that a further provision of the statute providing that the offense would also apply to a circumstance where the "life, health or morals [of the child] may be endangered" was unconstitutionally vague, but found that the offending language was severable from the statute. (Emphasis added.) The statute also makes it an offense "to cause or permit such child to be overworked, tortured, tormented, mutilated, beaten or cruelly treated." There is no dispute, however, that the Commonwealth's contention in this case was that Carosi actually endangered the children through her criminal negligence.

criminal negligence on the part of the defendant.[4]  Cf. Ellis

v. Commonwealth, 29 Va. App. 548, 556-57, 513 S.E.2d 453, 457

(1999) (child endangerment); Jones, 272 Va. at 701, 636 S.E.2d

at 408 (child abuse).

Carosi contends that the Commonwealth's evidence was

insufficient as a matter of law because it failed to show that

she actually endangered the life of her children as proscribed

by Code § 40.1-103(A).  Carosi advances two separate

challenges to the sufficiency of the evidence, contending that

the Commonwealth failed to prove both the necessary scienter,

in that the evidence did not show that she had actual

knowledge of the presence and character of the illegal drugs

in her home, and the requisite mens rea, in that the evidence

did not show that her acts or omissions rose to a level of

criminal negligence.  We will address Carosi's contentions in

that order.

With respect to the issue of scienter, Carosi asserts

that "the only facts before the [jury] are that there were

drugs and drug paraphernalia in a closed cabinet belonging to

---

[4] The two statutes are sufficiently similar that the
legislature has included identical provisions for an
affirmative defense to each offense where the prosecution is
"based solely on the accused parent having left the child at a
hospital or rescue squad . . . within the first 14 days of the
child's life."  Code § 18.2-371.1(B)(2); Code § 40.1-103(B).

[Carosi's] boyfriend."  Because the jury acquitted Carosi of all the drug possession charges, she contends that there was no evidence that she was actually aware that the drugs were present in the wardrobe.  Absent that knowledge, she asserts the evidence that she permitted the children to occasionally enter and play in the master bedroom would be insufficient to prove that she knowingly permitted the children's lives to be endangered.  We disagree.

When a defendant challenges the sufficiency of the evidence on appeal "[i]t is the appellate court's duty to examine the evidence that tends to support the conviction and to uphold the conviction unless it is plainly wrong or without evidentiary support."  Carter v. Commonwealth, 280 Va. 100, 104, 694 S.E.2d 590, 593 (2010) (citing Code § 8.01-680).  Moreover, when, as in this case, "a defendant elects to introduce evidence in [her] own behalf after the denial of a motion to strike the Commonwealth's evidence, any further challenge to the sufficiency of the evidence at trial or on appeal is to be determined from the entire record" including the defendant's own testimony.  Murillo-Rodriguez v. Commonwealth, 279 Va. 64, 74, 688 S.E.2d 199, 204-05 (2010).  Applying this standard of review, we hold that Carosi's contention that by failing to establish her guilt for the drug possession charges, the Commonwealth necessarily also failed

to prove she had knowledge that drugs were present in the wardrobe is not supported by the record when viewed in its entirety.

"To support a conviction based upon constructive possession [of illegal drugs], 'the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to [her] dominion and control.' " Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (quoting Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984)); accord McMillan v. Commonwealth, 277 Va. 11, 19, 671 S.E.2d 396, 399 (2009). Boyd's testimony that Carosi told him that the two bongs were in the wardrobe, that she kept clothing in it, and that the safe belonged jointly to her and Thomas would give rise to a reasonable inference by the trier of fact that Carosi was also aware of the presence and character of the marijuana and other drugs in the wardrobe and safe and that she jointly exercised dominion and control over them with Thomas. This evidence was sufficient for the Commonwealth to establish a prima facie case for constructive possession of the drugs and overcome Carosi's motion to strike those charges at the conclusion of the Commonwealth's case in chief. The evidence presented by

the defense, specifically Carosi's adamant denial that she used the wardrobe or was aware of what Thomas stored in it and that she had not made the statements during the search that Boyd attributed to her, as well as Thomas' assertion that all of the drugs and drug paraphernalia were his alone, thus created a question of fact to be resolved by the jury based upon its assessment of the credibility of the witnesses.

A jury is not required to accept the self-serving testimony of the defendant or of witnesses with a potential bias in favor of the defendant, but may rely on such testimony in whole, in part, or reject it completely. See Durham v. Commonwealth, 214 Va. 166, 169, 198 S.E.2d 603, 606 (1973); Upshur v. Commonwealth, 170 Va. 649, 655, 197 S.E. 435, 437 (1938). Thus, the jury reasonably could have accepted Thomas' assertion that the drugs were his, while rejecting Carosi's assertion that she was ignorant of the fact that the drugs were being stored in the wardrobe. Accordingly, while the jury may have found that the Commonwealth had not proven beyond a reasonable doubt that Carosi exercised dominion and control over the drugs, it could also have found the evidence was sufficient to prove that she was nonetheless aware of the presence and character of the drugs for purposes of determining whether she was guilty of the child endangerment charges.

13

We now turn to the central question of this appeal, which is embodied in Carosi's contention that the mens rea element of Code § 40.1-103(A) cannot be established solely upon the fact that a parent or other custodian knowingly permitted a child to be present in a home where illegal drugs were kept unsecured in an area accessible to the child. Carosi contends that unlike in Jones, where the mens rea of criminal negligence was supported by evidence that the child had actual access to heroin as well as by the "substantial risk of serious injury from the dangers inherent in the illicit drug trade" that was ongoing in the home, 272 Va. at 701-02, 636 S.E.2d at 408, here the evidence showed only that the illegal drugs were kept in a place where the children could have obtained access to them. Thus, even if the jury could have found that Carosi was aware that drugs were being stored in the wardrobe, she contends that "knowledge of a dangerous substance closed away in a cabinet by itself should not rise to the level of criminal negligence." As she did in the circuit court, Carosi asserts that keeping illegal drugs in this manner was no more likely to endanger her children than would "the possession of sharp knives in the kitchen, chemicals under the sink, prescription drugs in the medicine cabinet, and a lawfully possessed unloaded gun in the closet." We disagree.

14

Carosi is correct that in Jones we held that "[b]y engaging in the routine sale of drugs from her home and permitting her unattended young child access to those drugs, Jones committed willful acts and omissions" sufficient to prove her criminally negligent for purposes of establishing the mens rea element of Code § 18.2-371.1(B)(1). Id. at 702, 636 S.E.2d at 408 (emphasis added). Moreover, we further stated that our decision in that case did not establish "a per se rule" that a violation of the statute would occur whenever the evidence showed that a "child is living in the environment of the drug trade." Id. Contrary to Carosi's contention, however, neither does our decision in Jones stand for the proposition that the mens rea for criminal negligence could not be established based upon permitting a child to have access to illegal drugs in the absence of any evidence of drug trafficking.

Criminal negligence is established by showing that the defendant's acts or omissions were "of a wanton or willful character . . . show[ing] a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable result of [her] acts." Brown, 278 Va. at 528-29, 685 S.E.2d at 46 (internal

15

quotation marks omitted).  Such a determination necessarily will be specific to the circumstances of each case and, thus, whether a defendant's conduct is criminally negligent is usually a question for the trier of fact, unless reasonable minds could not differ.  See, e.g. Noakes v. Commonwealth, 54 Va. App. 577, 586, 681 S.E.2d 48, 52 (2009), aff'd, 280 Va. 338, 669 S.E.2d 284 (2010); cf. Griffin v. Shively, 227 Va. 317, 320, 315 S.E.2d 210, 212 (1984).

Initially, we reject Carosi's broad contention that a parent or other person having custody of a child cannot be held criminally liable for negligently permitting the child to be in an environment where illegal drugs are readily accessible because this circumstance is no different than permitting the child to be in an environment where there are "sharp knives in the kitchen, chemicals under the sink, prescription drugs in the medicine cabinet, and a lawfully possessed unloaded gun in the closet."  It is self-evident from Carosi's own characterization of the two circumstances that they differ in the important respect that the latter items, though unquestionably dangerous if left accessible to unsupervised children, are possessed by the parent or

16

custodian for lawful purposes, whereas drugs that are illegally present in the home are not.[5]

Finally, in order to accept Carosi's argument that the evidence was insufficient to establish the mens rea of criminal negligence in this case, we would have to conclude that reasonable minds could not differ on whether rearing children in a home where illegal drugs are readily accessible may constitute endangering the children for purposes of Code § 40.1-103(A). The myriad factors to be considered in such cases – such as the ages of the children, the length of the exposure, the level of supervision or lack thereof, and the quantity and variety of the drugs – suggest that as with most cases where criminal negligence is at issue, this determination is necessarily fact-specific. Such determination is best left to the jury, which is in the best position to assess the weight and credibility of the evidence. In that respect, and considering the totality of the evidence, we cannot say that the jury's finding of criminal negligence

---

[5] Moreover, Carosi provides no support for the implicit inference in her argument that a charge of child endangerment could never be supported by evidence that a parent or other custodian negligently permitted a child to have access to a legally-possessed dangerous substance. The facts of this case do not require us to decide that issue.

in this case was plainly wrong or without support in the record.

CONCLUSION

For these reasons, we hold that the Court of Appeals did not err in refusing Carosi's petition for appeal. Accordingly, the judgment of the Court of Appeals will be affirmed.

<u>Affirmed</u>.