COURT OF APPEALS OF VIRGINIA

Present:  Judges Petty, Alston and Decker
Argued by teleconference

CARLOS STEVENSON CHAMBERS

v.      Record No. 1214-17-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE WILLIAM G. PETTY
MAY 22, 2018

FROM THE CIRCUIT COURT OF CUMBERLAND COUNTY
Donald. C. Blessing, Judge

Paul C. Galanides (Joseph D. Morrissey; Morrissey and Associates,
PLLC, on brief), for appellant.

Christopher P. Schandevel, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Carlos Stevenson Chambers appeals his convictions for burglary pursuant to Code

§ 18.2-91 and grand larceny pursuant to Code § 18.2-95.  On appeal, Chambers argues that the

trial court erred because the evidence was insufficient to convict him of either offense.  For the

reasons stated below, we affirm.

BACKGROUND

Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite only those facts and incidents of

the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

"On appeal, we review the evidence in the light most favorable to the Commonwealth, granting

to it all reasonable inferences fairly deducible therefrom."  Wells v. Commonwealth, 65

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Va. App. 722, 725, 781 S.E.2d 362, 364 (2016) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

The victim in this case owned a large two-story metal storage building that was located in the vicinity of his house and used to store the victim's construction equipment. Both the house and the nearby building had been listed for sale. On January 2, 2014, after not visiting the storage building for "two or three weeks," the victim discovered that $20,000 worth of property was missing. The deputies who inspected the scene observed that the glass window in the back door was shattered but remained in place. The deputies testified that the thief could not have entered through that window. There was a footprint and dent in the side, "out-swing" doors, and the victim testified that he had nailed a two-by-four brace next to the out-swing doors so the thief could not have entered through that door.

Furthermore, Sergeant Sheario Harris testified that the Cumberland County Sheriff's Department received an email from an individual who owned property that adjoined that of the victim. The neighbor informed Sergeant Harris that two pieces of farm equipment had been stolen from his property;[1] a trail camera captured a photograph of two individuals trespassing on his property–later identified as Chambers and Donta Glover. The photographs were date-stamped December 18, 2013. Sergeant Harris circulated the photographs to law enforcement in neighboring counties, and a Buckingham County Deputy Sheriff, A.S. Jamerson, identified Chambers. Deputy Sheriff Jamerson proceeded to the home of Chambers's employer. Chambers's employer identified Chambers in the photographs. Additionally, Chambers's employer had eleven items that matched the description of some of the stolen items.

---

[1] We note that the jury acquitted Chambers of all offenses associated with the theft at the neighbor's property.

Investigator Anthony Taylor testified that he was at the employer's home when Chambers arrived. Chambers told Investigator Taylor that he bought the items from someone on behalf of his employer. Chambers said the woman "was in her fifties, a white lady." Chambers said that he first met the "lady at Bryant's store" and that she offered to sell the equipment because her husband just died. Chambers said that the woman and her son took him and Glover to the building, unlocked the building with a key, and sold them the items. According to Chambers, the woman's name was Linda, Laura, or Lora Hanes.

When the investigator asked for the woman's phone number, Chambers said he had contacted her by phone but he could not produce her phone number because he had lost his cell phone. When the investigator asked Chambers to show him his phone, Chambers produced an older cell phone with a cracked screen. The investigator asked if the woman's number was still in the phone, but Chambers answered that it was not and that he did not have her number or any other contact information. When they arrived at the victim's storage building, Chambers produced two crumpled up pieces of paper—"receipts"—that he said listed the items he agreed to buy. The only contact information on the papers was the name Laura Hanes or Linda Hanes.

At the sheriff's office, Investigator Taylor read Chambers his <u>Miranda</u> rights, and Chambers agreed to speak with him. When Investigator Taylor showed Chambers the trail camera photographs, Chambers became agitated. When asked if he recognized the two men in the photographs, Chambers said no. At that point, Chambers began using profanity, got up, cursed at Investigator Taylor, and left.

Investigator Taylor attempted to locate the woman that Chambers had described but was unsuccessful. The victim testified that at the time of the theft, only the victim and his real estate agent had keys to the building. The victim could not remember his real estate agent's last name

but thought that she was between thirty and forty years old, a brunette, and about five-foot-four inches tall.

Chambers, a convicted felon, testified on his own behalf at trial. Chambers testified that between December 19, 2013 and January 2, 2014, he met a woman "in her late forties" who was "five three, five four." According to Chambers, they had never met before, but she told Chambers that her husband died, and she had equipment to sell—the woman's name was Laura Hanes. Chambers said he obtained money from his "next-door neighbor," his employer, and bought items out of the storage building from the woman. Defense introduced three exhibits purporting to be handwritten receipts, listing what Chambers bought on behalf of his employer. This time, one of the "receipts" listed the phone number of the alleged seller.

At the conclusion of the evidence, the jury found Chambers guilty of burglary, pursuant to Code § 18.2-91, and grand larceny, pursuant to Code § 18.2-95. Consistent with the jury verdict, the court sentenced Chambers to twelve months in jail and a $1,000 fine. Chambers appeals those convictions to this Court.

ANALYSIS

On appeal, Chambers argues that the trial court erred because the evidence was insufficient to convict him for grand larceny and that the evidence was insufficient to prove that there was a breaking.

When considering the sufficiency of the evidence presented below, "we presume the judgment of the trial court to be correct." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002) (quoting Broom v. Broom, 15 Va. App. 497, 504, 425 S.E.2d 90, 94 (1992)). Indeed, "[i]n our review of the sufficiency of the evidence, we must affirm the conviction unless the trial court was plainly wrong or the conviction lacked evidence to support

- 4 -

it." Parham v. Commonwealth, 64 Va. App. 560, 565, 770 S.E.2d 204, 207 (2015); see also Code § 8.01-680.

Furthermore, we will not "substitute our judgment for that of the trier of fact." Beshah v. Commonwealth, 60 Va. App. 161, 168, 725 S.E.2d 144, 147 (2012) (quoting Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002)). Instead, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis added) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

> We have held that "circumstantial evidence is competent and is entitled to as much weight as direct evidence[,] provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Dowden v. Commonwealth, 260 Va. 459, 468, 536 S.E.2d 437, 441 (2000). "Circumstantial evidence is not viewed in isolation. While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." Muhammad v. Commonwealth, 269 Va. 451, 479, 619 S.E.2d 16, 32 (2005).

Finney v. Commonwealth, 277 Va. 83, 89, 671 S.E.2d 169, 173 (2009).

Chambers argues that the evidence was insufficient to prove that he committed grand larceny, pursuant to Code § 18.2-95. We disagree.

Code § 18.2-95 provides, "Any person who . . . commits simple larceny not from the person of another of goods and chattels of the value of $ 200 or more . . . shall be guilty of grand larceny." Larceny is defined as "the wrongful or fraudulent taking of personal goods of some intrinsic value, belonging to another, without his assent, and with the intention to deprive the owner thereof permanently." Skeeter v. Commonwealth, 217 Va. 722, 725, 232 S.E.2d 756, 758 (1977) (quoting Dunlavey v. Commonwealth, 184 Va. 521, 524, 35 S.E.2d 763, 764 (1945)); see also Payne v. Commonwealth, 222 Va. 485, 487, 281 S.E.2d 873, 874 (1981).

Here, Chambers admitted that he removed the stolen items from the property. Effectively, although not framed in these precise terms, Chambers's argument boils down to a claim of right.

> The claim-of-right defense requires a predicate showing of "good faith," Butts v. Commonwealth, 145 Va. 800, 811-12, 133 S.E. 764, 767-68 (1926), a *bona fide* belief by the taking party that []he has some legal right to the property taken, Strohecker v. Commonwealth, 23 Va. App. 242, 257, 475 S.E.2d 844, 852 (1996). While mistaken, it must still be "sincere," O'Banion v. Commonwealth, 33 Va. App. 47, 56, 531 S.E.2d 599, 603 (2000), and not a "dishonest pretense," 2 Joel Prentiss Bishop, Bishop on Criminal Law § 851, at 648-49 (9th ed. 1923). "Where the evidence is conflicting the question of *bona fides* is for the trier of the facts[.]" Pierce v. Commonwealth, 205 Va. 528, 533, 138 S.E.2d 28, 32 (1964). Whether asserted in good faith or as a "mere pretext," id., a claim-of-right defense relies heavily on factfinding. See Reed v. Commonwealth, 6 Va. App. 65, 70, 366 S.E.2d 274, 277 (1988) (observing that the claim-of-right defense is "usually a question for the trier-of-fact"). When successful, a claim-of-right defense negates the defendant's *animus furandi*— the "intent to steal" *mens rea* element of larceny. Rollin M. Perkins, Criminal Law 265-66, 271 (2d ed. 1969).

Groves v. Commonwealth, 50 Va. App. 57, 63, 646 S.E.2d 28, 31 (2007). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

Here, although Chambers claimed that he purchased the items from a woman who was purporting to be a lawful seller, the jury was free to reject Chambers's explanation for how he obtained those items. Indeed, law enforcement could not locate the woman who matched the description Chambers offered for the purported seller, she was not pictured in the trail camera photograph, and her alleged phone number did not appear on Chambers's "receipt" until trial. In fact, when Investigator Taylor asked for the woman's phone number during the investigation, Chambers said that he did not have any contact information for her despite claiming that he

spoke with her by phone. Additionally, when Chambers was confronted with the trail camera photograph during his interview, he denied that it was him and became agitated. Furthermore, the victim testified that he did not give Chambers permission to take items and that their value exceeded $200.

Therefore, based on the inconsistencies in Chambers's testimony, coupled with the other circumstantial evidence introduced, we hold that a rational trier of fact could have found that Chambers did not have a valid claim of right to the victim's property. The jury heard and saw the testimony entered into evidence in this case. In doing so, the jury was free to determine that Chambers's claim-of-right defense was a dishonest pretense to conceal his guilt. Pierce v. Commonwealth, 205 Va. 528, 533, 138 S.E.2d 28, 32 (1964); see also Burnette v. Commonwealth, 60 Va. App. 462, 476, 729 S.E.2d 740, 746 (2012) ("The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." (quoting Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995))). The evidence was sufficient for the jury to find that Chambers committed a grand larceny of the items in the victim's storage building.

Furthermore, because the evidence was sufficient to prove that Chambers committed a larceny of the victim's property, the evidence was sufficient to prove that he broke and entered the building to obtain that property.

In Guynn v. Commonwealth, 220 Va. 478, 480, 259 S.E.2d 822, 823-24 (1979), the Supreme Court noted that

> [t]he Commonwealth can establish a prima facie case that a
> defendant broke and entered by (1) proving that goods have been
> stolen from a house into which someone has broken and entered;
> (2) justifying the inference that both offenses were committed at
> the same time, by the same person, as a part of a criminal

- 7 -

enterprise; and (3) proving that these goods were found soon thereafter in the possession of the defendant.

Furthermore, Virginia law is clear that "[a] jury is not required to accept the self-serving testimony of the defendant . . . but may rely on such testimony in whole, in part, or reject it completely." Carosi v. Commonwealth, 280 Va. 545, 554-55, 701 S.E.2d 441, 446 (2010).

Although there was no direct evidence that Chambers committed a breaking in order to enter the victim's building, the circumstantial evidence was sufficient to prove that he did. Chambers not only admitted that he went inside the storage building to remove items from inside it, but he admitted that the door was locked when he got to the building. Accordingly, the jury could accept that the building was shut and secured when he first approached it and that a key or some other form of breaking was necessary to enter. See Lay v. Commonwealth, 50 Va. App. 330, 334-35, 649 S.E.2d 714, 715-16 (2007) ("Merely pushing open a door, turning the key, lifting the latch, or resort to other slight physical force is sufficient to constitute this element of the crime [breaking and entering]." (quoting Johnson v. Commonwealth, 221 Va. 872, 876, 275 S.E.2d 592, 595 (1981))). Simply put, the jury was not required to accept Chambers's self-serving testimony but could "rely on such testimony in whole, *in part*, or reject it completely." Carosi, 280 Va. at 554-55, 701 S.E.2d at 446 (emphasis added). The jury was entitled to disbelieve the portion of Chambers's testimony regarding the woman who he claimed let him in the building but believe him when he admitted that the building was shut and locked when he arrived. Additionally, the victim testified that the doors were locked and undamaged the last time he was there. Accordingly, "a rational factfinder could reasonably reject [Chambers's] theories in his defense and find that the totality of the suspicious circumstances proved beyond a reasonable doubt that [Chambers] was the criminal agent in each of the offenses charged." Commonwealth v. Moseley, 293 Va. 455, 466, 799 S.E.2d 683, 688 (2017).

Chambers argues that the Supreme Court of Virginia case, Finney v. Commonwealth, 277 Va. 83, 671 S.E.2d 169 (2009), requires reversal. We disagree.

In Finney, like in this case, the appellant argued that the evidence was insufficient to prove a "breaking" as required by the provisions of Code §§ 18.2-90 and 18.2-91. Id. at 85, 671 S.E.2d at 171. The Supreme Court reversed the trial court, holding that, "under the particular circumstances of [that] case," the evidence was insufficient to support a conviction. Id. at 90-91, 671 S.E.2d at 173-74. There, a neighbor saw Finney walking on a side street by the victim's home, "carrying 'an arm full of items.'" Id. at 86, 671 S.E.2d at 171. As Finney passed the neighbor, he asked the neighbor if he wanted to buy any of the items he was holding. Id. The next day, the victim went to his home and found "an opening in the backyard fence had been created by the forced removal of 'four or five upright . . . vertical boards,' the doorjamb on his storage building was "ripped apart," one of the garage windows was open, and all the items that were in the building and garage were gone. Id. The victim had last been to the house approximately a week prior—at that time all of his tools and items were present, the lock was on the building, and the fence was intact. Id. at 86-87, 671 S.E.2d at 171. Later that day, the neighbor and the victim watched the house and observed Finney's mother drive her truck to the victim's property while Finney was a passenger. Id. Finney's mother drove around the block twice before stopping next to the property for Finney to get out, pass through the broken portion of the fence, and begin "rifling through" what was left of the items in the building. Id. at 87, 671 S.E.2d at 172. When the victim and the neighbor approached Finney, he ran back to the truck, shouting "that he did not steal any of [the victim's] property but that he knew who did." Id. When police arrested Finney, he said, "I didn't take anything, but I know who did. I can get the stuff back." Id. Finney said that he was on the property "looking for a friend named 'Red.'" Id.

In reversing the trial court, the Supreme Court noted that when Finney was seen entering the victim's property, the opening in the fence had already been created, and the doorjamb had already been "ripped apart." Id. at 89, 671 S.E.2d at 173. Further, there was no evidence that Finney went into the building the day before in order to obtain the tools he was seen carrying away, "or if he did enter the building, that he was required to use any physical force to do so." Id. "Moreover, under the circumstances of this particular case, Finney's possession of some of the tools stolen from [the victim's] building, without more, does not prove that Finney obtained the tools by breaking into the building." Id. at 90, 671 S.E.2d at 173. In that case, the circumstantial evidence was insufficient to prove that the breaking, entering, and larceny of the tools all occurred at the same time. Id.

In this case, however, Chambers never claimed that the building was already opened when he arrived. By contrast, in Finney, there was no evidence that any physical force was required for Finney to enter the building or the property. As noted above, merely turning a key is sufficient to constitute a breaking. See Lay, 50 Va. App. at 334-35, 649 S.E.2d at 715-16. There was no proof that Chambers was on the property after the building had been opened, like there was in Finney. Instead, Chambers said that the building was shut and locked when he arrived, but that someone else opened it so that he could go in. Accordingly, Finney is distinguishable.

CONCLUSION

Because the evidence was sufficient to prove both a breaking and entering and a grand larceny, we affirm.

Affirmed.