COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges AtLee, Athey and White

MELISSA LYNNE BLACKARD

v.     Record No. 2134-23-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE KIMBERLEY SLAYTON WHITE
APRIL 22, 2025

FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James J. Reynolds, Judge

(Lauren E. Brice, Assistant Public Defender; Virginia Indigent
Defense Commission, on briefs), for appellant.

(Jason S. Miyares, Attorney General; Angelique Rogers, Assistant
Attorney General, on brief), for appellee.


Following a revocation hearing, the trial court found Melissa Lynne Blackard guilty of

violating the conditions of her supervised probation for a third time. The trial court found that

Blackard failed to follow her probation officer's instructions and to report to the officer as

instructed, unlawfully used a controlled substance, and absconded from supervision. For these

violations, the trial court revoked Blackard's previously suspended four-year sentence but

resuspended two years, leaving her with an active sentence of two years.

On appeal, Blackard challenges the Condition 11 violation as a basis for her probation

violation conviction. She contends that the trial court was "plainly wrong" in finding her testimony

to be incredible and finding sufficient evidence to prove that she absconded from supervised

probation. In addition, Blackard challenges her two-year sentence of incarceration for the probation

violation. She contends that the trial court erred in imposing this sentence "instead of considering

_____

[*] This opinion is not designated for publication. See Code § 17.1-413(A).

reasonable alternatives like a longer term of supervised probation, including ordering intensive supervision to ensure her compliance, or court-ordered substance abuse treatment." Finding no error, we affirm.[1]

BACKGROUND

On August 26, 2020, following Blackard's earlier guilty plea to the felony charge of possessing a Schedule I or II controlled substance, the trial court sentenced her to five years of incarceration with five years suspended on the condition that she be of good behavior for five years. In imposing this sentence, the court ordered that Blackard be placed on supervised probation for 12 months unless released sooner by the court or the probation officer. As a part of probation, Blackard was required to submit to weekly drug testing and to attend a minimum of 90 AA/NA meetings during the first 6 months.

Thirteen months later, the trial court convicted Blackard of violating the conditions of her probation. Among other things, she allegedly absconded from supervision. The trial court revoked the previously suspended five-year sentence and resuspended all of it, except for the time necessary for Blackard to enter and complete the Community Corrections Alternative Program. But Blackard failed to complete the program. For this reason, in early February 2022, the trial court again found Blackard guilty of violating the conditions of her probation. This time, the trial court revoked all five years of her previously suspended sentence and resuspended four years.

Following her release from confinement, Blackard returned to supervised probation in July 2022 and again was required to submit to screening for drug use. On April 18, 2023, she tested positive for cocaine. In response, Blackard's probation officer, Haley Moran, filed with

---

[1] After examining the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

the trial court a major violation report ("MVR") dated May 9, 2023. In this report, based on the positive drug screen, Moran alleged that Blackard had violated written Condition 8 of her probation, which stated, "I will not unlawfully use, possess or distribute controlled substances or related paraphernalia." Accordingly, Moran requested a capias for Blackard's arrest and another revocation hearing.

Three months later, Moran filed an MVR addendum alleging that Blackard had violated Conditions 6 and 11 of her probation by missing scheduled appointments and by absconding from supervision. Supporting the alleged violations, Moran informed the trial court that, on August 9, 2023, she went to 30 Oak Ridge Avenue, Blackard's reported address, and only found a renter, James Hudson, at the residence. She stated that Hudson answered the door and admitted that he knew Blackard, but he had not seen her "in over two weeks" and he did not have a good contact number for her because "she changes it too often." Moran further stated that she gave Hudson a door tag with the next appointment date for the following day, August 10, asking Hudson to give it to Blackard "if she shows up."

At the revocation hearing on December 1, 2023, the trial court took judicial notice of the original sentencing order, the prior revocation orders, and Moran's reports. In addition, Blackard "concede[d]" all of the alleged violations except the Condition 11 violation, leaving only the issue of whether Blackard had absconded from supervision. Afterwards, the Commonwealth offered no other evidence, but Hudson and Blackard testified on her behalf. Hudson admitted that he lived with Blackard when Moran visited the residence, but he had been napping and he did not know whether Blackard was there at that time. But he admitted that he told Moran that he had not seen Blackard in two weeks and that he "didn't know where she was."

Blackard testified that she was at home doing laundry and folding Hudson's clothes at the back of the house when Moran talked with Hudson at the front door; however, she did not

- 3 -

become aware that he was talking with someone until she went into a bedroom and he told her that "somebody came by and asked for [her]." She further testified that she found Moran's door tag "later on," called the telephone number on the tag, and left a message. She stated that she spoke with "Casey," whom she believed to be her probation officer because she did not know that she "had changed over to another probation officer." In her message, Blackard stated that she had been at home and "in the back cleaning and doing clothes and laundry." She testified that she had been living at the address for over a year.

During cross-examination, Blackard stated that she did not know why Hudson told Moran that he had not seen her in two weeks. She testified that she received all of her mail at the 30 Oak Ridge Avenue address and that she was arrested there. When asked why she did not keep her probation office appointment stated on the door tag, Blackard stated that she was scared that she had been or would be charged with a probation violation again. And when the trial court asked her about the two appointment letters that Moran mailed to the Oak Ridge Avenue address, Blackard denied receiving them even though she reiterated that she received all of her mail at that address. She said, "I've never absconded from that address at all. I've been there the whole time."

Regarding the alleged Condition 11 violation, Blackard asked the trial court to find her not guilty of absconding from supervised probation. Relying on her testimony that she was at the Oak Ridge Avenue address when Moran visited and that it was the place where she received her mail and was arrested, she argued that Moran's inability to locate her when she spoke with Hudson was due to "some kind of miscommunication." Regarding the other alleged violations, Blackard asked the trial court to consider that she already had served 31 days. In addition, she asked the trial court to continue the matter for sentencing because the Hope Center had accepted her on the condition that she undergo a full screening. But the trial court replied, "Nope."

Afterwards, the trial court found Blackard guilty of violating Conditions 6, 8, and 11 of her supervised probation. In explaining its ruling, the trial court told Blackard that she was obligated to stay in touch with probation and that "[i]t[] [was] not their obligation to come hunting [her] down." In addition, the trial court stated that he disbelieved Blackard's testimony. During her subsequent allocution, Blackard admitted to the trial court that she knew that using cocaine or possessing cocaine is a felony offense. After reciting Blackard's previous probation violations and the resulting sentences, the trial court noted that Blackard responded to these dispositions by "using cocaine" and absconding from supervision. The trial court continued, saying to Blackard, "So, your chances are up." Thereafter, the trial court declined to send Blackard to the Hope Center and revoked all four years of her previously suspended sentence, resuspending two years on the condition that she be of good behavior for five years. This appeal follows.[2]

## ANALYSIS

Blackard appeals her probation violation conviction and her sentence for that conviction. Alleging the trial court erred in finding that she violated Condition 11 of her supervised probation, she argues the trial court lacked sufficient evidence to find that she absconded from probation. She contends the trial court was "plainly wrong" in finding her testimony to be incredible. Alleging the trial court erred in imposing a two-year sentence of incarceration for the probation violation, she argues that the court failed to consider reasonable alternatives to incarceration, such as a longer term

---

[2] On January 17, 2024, Blackard filed a motion to reconsider, which requested drug court in lieu of an active sentence. By order entered January 22, 2024, the trial court denied this motion without a hearing. This appeal does not include the trial court's denial of the motion to reconsider. Blackard's notice of appeal, which was filed December 11, 2023, states that she appeals "the Order of Sentencing announced on December 1, 2023." Also, neither the assignments of error nor the related page references in her opening brief refer to the trial court's ruling on the motion to reconsider.

of probation with "intensive supervision" and court-ordered substance abuse treatment. As we explain below, neither assignment of error has merit.

*I. The trial court was entitled to find that Blackard had absconded from supervision.*

On appeal from a revocation proceeding, "[t]he evidence is considered in the light most favorable to the Commonwealth, as the prevailing party below." *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013). "[T]he trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Id.* (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). An abuse of discretion occurs "[o]nly when reasonable jurists could not differ." *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005). "And by definition, a trial court 'abuses its discretion when it makes an error of law.'" *Khine v. Commonwealth*, 75 Va. App. 435, 444 (2022) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)). But our Supreme Court has recognized that there are only

> "three principal ways" by which a court abuses its discretion: "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment."

*Lawlor v. Commonwealth*, 285 Va. 187, 213 (2013) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)).

"In evaluating whether a trial court abused its discretion, . . . 'we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action.'" *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009) (quoting *Beck v. Commonwealth*, 253 Va. 373, 385 (1997)). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance."

*Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (alterations in original) (quoting *Lawlor*, 285 Va. at 212).

After suspending a sentence, a trial court "may revoke the suspension of sentence for *any cause* the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A) (emphasis added). Thus, the statutory power of the trial court to revoke a suspended sentence is broad, but "it is not without limitation." *Duff v. Commonwealth*, 16 Va. App. 293, 297 (1993). "The cause deemed by the court to be sufficient for revoking a suspension must be a reasonable cause." *Id.* (quoting *Hamilton v. Commonwealth*, 217 Va. 325, 327 (1976) (per curiam)).

In this case, the trial court identified absconding from supervision as one of several reasons for revoking Blackard's previously suspended sentence for a third time. This implicit finding of reasonable cause was not an abuse of discretion as a matter of law. Absconding from probation is a well-recognized "reasonable cause" for revoking a suspended sentence. *See, e.g.*, *Allison v. Commonwealth*, 40 Va. App. 407, 412 (2003). After all, when "[appellant], due to his own conduct, is no longer under [the broad control of the court and the direct supervision of the court's probation officer], the act of grace in granting probation in the first place is rendered a nullity." *Id.* at 411-12 (alterations in original) (quoting *Rease v. Commonwealth*, 227 Va. 289, 295 (1984)).

The trial court's implicit finding of reasonable cause also was not an abuse of discretion as a matter of fact. The record fairly supports the trial court's finding of a Condition 11 violation. Moran's addendum to her MVR, of which the trial court took judicial notice without objection, provided sufficient facts upon which a rational fact finder could conclude that, as of August 2023, Blackard had absconded from supervised probation. It established that Blackard failed to report to Moran's office on July 11 and August 10 after Moran had mailed two office

appointment letters to her last known address, 30 Oak Ridge Avenue, on June 20 and August 1. It also established that, as of August 10, Blackard's whereabouts were unknown to Moran and even Hudson, a renter of the premises who told Moran that he knew Blackard and that he had not seen her "in over two weeks" and did not have a contact number for her because "she changes it too often."

Finally, when Blackard testified that she found the door tag from probation, but she did not report to the office because she was "scared" and believed that she was "already on the wanted list," a rational jurist was entitled to infer that Blackard willfully avoided contacting probation out of fear of being "violated." Also, when Blackard testified that she was at home on August 9 and knew that Hudson was talking with someone at the door but did not know that he was speaking with Moran because she was doing laundry at the back of the house, a rational jurist was permitted to infer that Blackard was lying to conceal her guilt. *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998). Thus, the trial court, sitting as the trier of fact, could treat Blackard's untruthful, self-serving testimony as "affirmative evidence of guilt." *See Coleman v. Commonwealth*, 52 Va. App. 19, 25 (2008) (quoting *Wright v. West*, 505 U.S. 277, 296 (1992)). Given this evidence, the trial court was not required to accept as a reasonable hypothesis of innocence Blackard's argument that Moran's inability to locate her at the Oak Ridge Avenue residence on August 9 was due to "some kind of miscommunication."

In her opening brief, Blackard addresses the issue of the trial court's role as the judge of witness credibility, but she only does so in supporting her claim that "[t]he trial court was plainly wrong when it deemed [that] [her] testimony was incredible." She first complains that the trial court did not explain why it did not believe her testimony. Then, relying on *Kelley v. Commonwealth*, 69 Va. App. 617, 627 (2019), she argues that her testimony was not "incredible" because it was "not 'so contrary to human experience as to render it unworthy of belief'" and

was corroborated by Hudson's' testimony about living with her at the Oak Ridge Avenue address "at the time." But this argument in unavailing.

Assuming, without deciding, that Blackard preserved for appeal her argument that the trial court should have believed her testimony because it was not inherently incredible as a matter of law, she presents an issue that is not subject to appellate review. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019) (quoting *Elliott v. Commonwealth*, 277 Va. 457, 462 (2009)). For this reason, an appellate court must accept "the trial court's determination of the credibility of witness testimony unless, 'as a matter of law, the testimony is inherently incredible.'" *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006) (quoting *Walker v. Commonwealth*, 258 Va. 54, 71 (1999)). As fact finder, the trial court is "not required to accept the self-serving testimony of the defendant . . . but may rely on such testimony in whole, in part, or reject it completely." *Carosi v. Commonwealth*, 280 Va. 545, 554-55 (2010). "[E]ven if defendant's story [is] not *inherently* incredible, the trier of fact need not . . . believe[] the explanation." *Montgomery v. Commonwealth*, 221 Va. 188, 190 (1980).

Here, at bottom, Blackard asks this Court to step into the shoes of the trial court and reassess the credibility of her testimony. She ignores well-established appellate law and presents the question of whether the trial court, as fact finder, erred in not finding her testimony to be inherently *credible* as a matter of law. This we cannot do. Accordingly, as to the first assignment of error, we affirm the trial court's judgment.

> II. *The trial court did not abuse its discretion in imposing a two-year sentence of incarceration.*

"We review the trial court's sentence for abuse of discretion." *Laney v. Commonwealth*, 76 Va. App. 155, 165-66 (2022) (quoting *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011)).

"When a defendant fails to comply with the terms and conditions of a suspended sentence, the trial court has the power to revoke the suspension of the sentence in whole or in part." *Alsberry v. Commonwealth*, 39 Va. App. 314, 320 (2002) (quoting *Russnak v. Commonwealth*, 10 Va. App. 317, 321 (1990)). "A trial court has broad discretion to revoke a suspended sentence and probation based on Code § 19.2-306, which allows a court to do so 'for any cause deemed by it sufficient.'" *Id.* (quoting *Davis*, 12 Va. App. at 86). "The court's findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion." *Allison*, 40 Va. App. at 411 (quoting *Davis*, 12 Va. App. at 86). "The discretion required is a judicial discretion, the exercise of which 'implies conscientious judgment, not arbitrary action.'" *Alsberry*, 39 Va. App. at 320 (quoting *Hamilton*, 217 Va. at 327). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). In addition, "[b]arring clear evidence to the contrary, this Court will not presume that a trial court purposefully ignored mitigating factors in blind pursuit of a harsh sentence." *Bassett v. Commonwealth*, 13 Va. App. 580, 584 (1992).

In this case, Blackard contends that the trial court abused its discretion when it "ignored" "reasonable alternatives" to incarceration and imposed a two-year active prison sentence. She contends that a longer term of probation, "intensive supervision," and court-ordered substance abuse treatment were such reasonable alternatives. But nothing in the record supports the finding that the trial court failed to *consider* these sentencing alternatives. To the contrary, the trial court's closing remarks at the revocation hearing suggest that it chose to impose a two-year active prison sentence because the "reasonable alternatives" imposed for the two previous violations of probation, especially the court-ordered substance abuse treatment program, had failed. After the trial court

refused Blackard's request for a continuance so that she could undergo a full screening for acceptance into the Hope Center, it recited the history of her probation violations and its sentences. It also noted that Blackard responded to these previous dispositions by "using cocaine" and absconding from supervision. Given this history and the new violations of Conditions 6, 8, and 11 of probation, we cannot say that reasonable jurists could not differ as to what sentence would be appropriate.

As we repeatedly have observed, "[w]hen coupled with a suspended sentence, probation represents 'an act of grace on the part of the Commonwealth to one who has been convicted and sentenced to a term of confinement.'" *Hunter v. Commonwealth*, 56 Va. App. 582, 587 (2010) (quoting *Price v. Commonwealth*, 51 Va. App. 443, 448 (2008)). The record here supports the trial court's action. Blackard failed to make productive use of the grace that she had received, and, in response, the trial court properly exercised its discretion by telling her that her "chances [were] up" and imposing a portion of the sentence that it had suspended twice before for a felony drug offense. Accordingly, as to the second assignment of error, we affirm the trial court's judgment.

CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*