COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Senior Judges Annunziata, Frank and Petty

JERED CODY POPE, S/K/A
 JARED CODY POPE

MEMORANDUM OPINION*
v.      Record No. 0654-21-2      PER CURIAM
JUNE 14, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF CHARLOTTE COUNTY
Kimberley S. White, Judge

(John C. Marsden, on brief), for appellant. Appellant submitting on
brief.

(Jason S. Miyares, Attorney General; Tanner M. Russo, Assistant
Attorney General, on brief), for appellee.


Counsel for Jered Cody Pope, s/k/a Jared Cody Pope filed a brief on his behalf accompanied

by a motion for leave to withdraw in accordance with *Anders v. California*, 386 U.S. 738, 744

(1967). Initially, Pope filed a *pro se* supplement to his counsel's *Anders* brief with additional

assignments of error. Pope has since moved this Court to withdraw his supplemental pleading and,

instead, relies upon his counsel's brief. After examining the briefs and record in this case, we affirm

the trial court's judgment. We unanimously hold that oral argument is unnecessary because "the

appeal is wholly without merit." *See* Code § 17.1-403(ii)(a); Rule 5A:27(a).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party [below]." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

On August 8, 2019, Charlotte County Sheriff's Deputy R. Kolich and Farmville Police Officer B. Paulette utilized a confidential informant, R. Routt, Jr., to execute a controlled buy of methamphetamine from appellant. Appellant and Routt had been "real good friends" for a couple of years. Prior to the buy, Kolich and Paulette met with Routt at a designated meeting site, searched his person, and provided him with an audio transmitter and $400. Routt then departed the meeting site with undercover Special Agent M. Robertson. Robertson drove Routt to appellant's house in an unmarked police vehicle. Kolich and Paulette followed, monitoring the transaction in real time. When they arrived at appellant's house, Routt exited the vehicle, approached appellant, purchased methamphetamine, and returned to the vehicle. Robertson then drove Routt back to the meeting place, where Routt turned over plastic bags that contained seven grams of methamphetamine. The officers searched Routt again, he did not have any contraband, and he no longer had $400. The drug transaction was captured on video, which depicted appellant weighing out methamphetamine and placing it in a bag.[1]

On August 19, 2019, Kolich again utilized Routt to execute a controlled purchase of methamphetamine from appellant. Kolich and Special Agent J. Lacks met Routt and Routt's uncle Jamie[2] at a predetermined location, where Lacks searched Routt, Jamie, and Jamie's car. Kolich

---

[1] At the conclusion of the February 10, 2021 trial, appellant changed his *not guilty* plea to *guilty* for distributing methamphetamine to Routt on August 8, 2019. He does not challenge that conviction on appeal.

[2] Routt's uncle Jamie was paid $70 to drive Routt, who did not have a driver's license, to the controlled buy. Jamie was not working off pending charges.

provided Routt with an audio transmitter and $400. Jamie then drove Routt to appellant's residence where the controlled purchase was expected to take place. Kolich and Lacks followed them and were "listening to the audio wire." Appellant was not home. Routt spoke with an unknown male at appellant's house for about eight minutes, before finding out that appellant was at a different location. Kolich noted that they were discussing drugs, but nothing about the conversation suggested that they engaged in a drug transaction, and Routt denied purchasing any drugs at that time.[3] Routt returned to Jamie's vehicle, and they made their way to appellant's location—the home of another drug user. Kolich conceded that the audio captured the voices of other people who were present at the house, but he testified that Routt did not interact with anyone except appellant. The drug buy took place in Jamie's vehicle. Appellant gave Routt a black bag and a scale. Routt told appellant he would pay $400 "for a quarter." Routt removed a baggie containing methamphetamine from the black bag, weighed out seven grams on the scale, and then returned the black bag and the scale to appellant. Routt gave appellant $400.

Back at the meeting location, Routt gave Kolich the methamphetamine. As before, the officers searched Routt, Jamie, and Jamie's vehicle upon their return. They did not find any contraband, and Routt no longer had any of the buy money.

At the time of trial, Routt had committed, but not been charged with, felony offenses related to drugs and a weapon, and he was on felony probation. Routt testified that he was not promised anything from the Commonwealth in exchange for his testimony, but he was "looking to receive whatever benefit" he could get from it. Routt understood that if he did not testify truthfully, he could "get the most." Routt also admitted that he was under the influence of methamphetamine when he conducted the controlled buys, but he was not intoxicated to the extent that it affected his

---

[3] Jamie testified at trial that Routt did not conduct a transaction at appellant's house.

recollection.  Finally, Routt admitted that he used a smart phone to record the transactions and knew "how not to reveal something on the camera if [he] didn't want it to be seen."

Appellant testified at the February 10, 2021 bench trial.[4]  He admitted to selling drugs to Routt on prior occasions, including on August 8, and he admitted to being present at the August 19 drug transaction.  However, he denied selling drugs to Routt on August 19, 2019, and, instead, testified that he wanted to purchase marijuana from Routt.

On October 11, 2019, Kolich utilized a different confidential informant, A. Robertson, to conduct a controlled buy from appellant.  Robertson had pending charges for possessing methamphetamine and was hoping to get as much credit as she could "to get out of trouble."  Kolich met Robertson at a designated meeting location and searched her pockets, her shoes, her socks, and her pocketbook to ensure she did not have any contraband.  Agent Lacks searched her car.  Kolich provided Robertson with video equipment, an audio transmitter, and $100.  Robertson then drove to appellant's house, where she exited the vehicle and entered the residence.  Appellant was not present, but she spoke with a man there by the name of Eddie.  Robertson and Eddie spoke for about thirty minutes, and Kolich listened to their conversation.  They did not discuss anything that sounded "narcotics related," and there was no talk about money exchanging hands.[5]  Robertson called appellant to find out where he was, and he told her to come to a different location.  Robertson left appellant's house and started to drive to his location.  Kolich and Lacks followed her for a while until she got lost.  Robertson drove around for approximately an hour, but she maintained contact with the officers by cell phone.  Eventually, Robertson arrived at her destination and appellant

---

[4] The trial took place on two separate dates.  Appellant was tried on February 10, 2021, for the August 8 and August 19 dates of offense, and he was tried on March 17, 2021, for the October 11 date of offense.  Judge Kimberley S. White presided over both trials.  Appellant did not testify at the second trial.

[5] Robertson denied at trial that she purchased drugs from Eddie.

entered her vehicle. They drove to an apartment complex in Keysville where appellant got out of the car, entered the apartment complex, and then returned with a gram of methamphetamine. Appellant gave Robertson the drugs in exchange for $90. Robertson then dropped appellant off behind a nearby store and returned to the meeting location. Kolich and Lacks followed her, noting that she did not stop anywhere along the way. Back at the meeting site, Robertson gave the narcotics and $10 to Kolich. The officers then searched Robertson, and her car, and found no contraband.

The trial court found appellant guilty of all three offenses. This appeal followed.

ANALYSIS

Appellant argues that the evidence was insufficient to prove he distributed methamphetamine to Routt on August 19 and to Robertson on October 11, because Routt and Robertson, the main sources of the evidence against him, were not credible. In support of his assertion, appellant stresses that both informants expected consideration for their testimony, that both informants had an opportunity to buy drugs from another source on each date of offense, that both informants were knowledgeable about how to conceal their actions on the videorecording, and that Robertson was not properly searched. He concludes "no rational trier of fact could have believed them and concluded that [appellant] was guilty." We disagree.

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "[W]e consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below." *Vay v. Commonwealth*, 67 Va. App. 236, 242 (2017) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 629 (2009)). "This principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true

- 5 -

all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

Additionally, witness credibility "is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "When the law says that it is for triers of the facts to judge the credibility of a witness, the issue is not a matter of degree." *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Swanson v. Commonwealth*, 8 Va. App. 376, 379 (1989)). "[T]he trier of fact is free to believe or disbelieve, in whole or in part, the testimony of any witness." *Rams v. Commonwealth*, 70 Va. App. 12, 38 (2019) (quoting *Carosi v. Commonwealth*, 280 Va. 545, 554-55 (2010)). "[I]f reasonably fairminded men may differ as to the conclusions of fact to be drawn from the evidence, or if the conclusion is dependent upon the weight to be given the testimony, in all such cases the verdict of the [fact finder] is final and conclusive and cannot be disturbed" on appeal. *Shumate v. Mitchell*, 296 Va. 532, 550 (2018) (quoting *Gilliam v. Immel*, 293 Va. 18, 24 (2017)).

The evidence presented at trial sufficiently supported the convictions. Indeed, appellant admitted that he gave seven grams of methamphetamine to Routt on August 8, 2019, in exchange for $400, and he conceded that he regularly sold Routt drugs. On August 19, 2019, Routt purchased another seven grams of methamphetamine in exchange for $400, the same quantity of drugs for the same amount of money as on August 8. The exchange was captured on video and audio transmitter. Although appellant's face was not caught on tape, he admitted that he was present during the

transaction. Officers searched Routt, Jamie, and Jamie's car before and after the drug transaction and found no contraband. Also, after the transaction, Routt no longer had $400. These facts provided sufficient evidence upon which the trial court could conclude that appellant distributed methamphetamine to Routt on August 19.

With respect to the October 11 transaction, Robertson testified that appellant entered her car and Robertson drove him to an apartment complex, where he secured a gram of methamphetamine and sold it to her for $90. The transaction was caught on video and, although appellant's face is not clear, Kolich recognized his voice. Officers searched Robertson and her car before and after the transaction and found no contraband. After the transaction, Robertson had only $10 of the $100 given her by police. Robertson's testimony, together with the video surveillance and the audio transmitter, sufficiently proved that appellant distributed methamphetamine to Robertson on October 11.

We are not persuaded by appellant's assertion that Routt and Robertson were not credible. The Commonwealth informed the trial court that Routt and Robertson were working for the police to assist with pending, or possible criminal charges, and that they would get credit for their testimony. The trial court was also apprised of their respective criminal histories. Noting that almost every case involving a confidential informant raises "credibility issues," the trial court resolved those credibility issues in favor of the Commonwealth. "When 'credibility issues have been resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" *Towler*, 59 Va. App. at 291 (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)). "[T]his Court must accept 'the trial court's determination of the credibility of witness testimony unless, as a matter of law, the testimony is inherently incredible.'" *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019) (quoting *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006)). "[T]his Court cannot say a witness' testimony is

inherently incredible unless it is 'so contrary to human experience as to render it unworthy of belief.'" *Id.* (quoting *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011)). The mere fact that Routt and Robertson were seeking to assist themselves in their own respective criminal cases does not, as appellant suggests, render their testimony inherently incredible or so contrary to human experience as to render it unworthy of belief. The trial court was aware they expected to gain something from their testimony and still believed them. We do not disturb the trial court's ruling on appeal.

Equally unavailing are appellant's assertions that Routt and Robertson might have purchased the drugs from someone else, that Robertson was not properly searched, and that the informants misused the video equipment. The record does not support these contentions. Routt spoke with someone for eight minutes at appellant's house and, while the two discussed drugs, there was no indication they engaged in a drug transaction. In fact, the person Routt spoke with complained because his drugs were stolen, and Routt still had $400 when he purchased the methamphetamine from appellant shortly thereafter. Robertson spoke with Eddie for thirty minutes at appellant's house, but they did not discuss drugs and there was no exchange of money. Robertson still had $100 for her controlled purchase. Both informants kept in contact with the officers, who were monitoring them in real time. Moreover, the record shows that Robertson was properly searched. In fact, Lacks testified that he searched her pockets, her socks and shoes, the outside of her clothes, her pocketbook, and her car, and found no contraband. Finally, the record fails to prove that Routt or Robertson deliberately misused the video and audio transmitter.

In sum, the totality of the evidence supports the trial court's finding that appellant sold methamphetamine to Routt on August 19 and to Robertson on October 11, 2019. It was within the trial court's discretion to rule on the credibility of the witnesses and to draw conclusions from the proven facts. The convictions will stand.

CONCLUSION

We affirm the trial court's judgment and grant the motion for leave to withdraw. *See Anders*, 386 U.S. at 744. This Court's records shall reflect that Jered Cody Pope, s/k/a Jared Cody Pope is now proceeding without the assistance of counsel in this matter and is representing himself on any further proceedings or appeal.

*Affirmed.*